WILLIAM HOEFLING & SON v. CITY OF SAN ANTONIO.

No. 8290.

1. **License to Carry on an Occupation.**—In a general sense a license is an official permit to carry on a business or trade, or perform other acts which are forbidden by law except to persons obtaining such permit. It also may apply to occupations not otherwise unlawful, but which the public welfare may require to be under some restraint.

2. **Power to License does not Include Power to Tax.**—The power given in a city charter to license does not confer a power to tax; by which is meant the power to take from the citizen a sum for the support of the government, whether it be national, State, or municipal.

3. **Taxation Must be Uniform.**—The Constitution provides, that "all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax." Const.. art. 8, sec. 2. This is as binding in case of occupation taxes levied by a municipal corporation as in such taxation levied by the State.

4. **Unequal Taxation — Indirect Violation.** — A municipal tax upon butchers vending meat of $75 per stall per annum, and collected only of butchers vending meat at private stalls, and not of butchers renting stalls from the city, is a violation of the provision of the Constitution requiring equal taxation. The inhibition applies to the collection equally as to the levy of taxes.

  5. **Constitutional Limit to Subjects of Municipal Taxation.**— Under the Constitution the sum a municipal corporation may collect as a tax on a given occupation can not "exceed one-half of the tax levied by the State for the same period on such profession or business." And this necessarily involves the proposition that the Legislature must determine that the occupation shall be taxed for the benefit of the State before a municipal corporation can tax it at all. When the Legislature has declared that an occupation shall be taxed, then, and not before, has a county, town, or city the power to levy a tax upon such occupation. The Constitution only permits occupations to be taxed when the Legislature deems proper.

APPEAL from Bexar. Tried below before Hon. W. W. KING.

*George C. Altgelt* and *Henry E. Vernor*, for appellants.—1. The ordinance of the city of San Antonio imposing an annual occupation tax upon butchers establishing private stalls for vending meats within the city is not equal and uniform, and therefore void; and appellants having paid such tax under protest duly entered, should have been awarded judgment against appellee for the amount paid, with interest and costs. Const., art. 8, secs. 1, 2; Pullman Co. v. The State, 64 Texas, 274; 2 Desty on Tax., 1397, et seq.; St. Louis v. Spiegel, 75 Mo., 145.

  2. The ordinance of the city of San Antonio levying a tax of $75 per annum upon individuals for the right of establishing stalls for vending of meats is without authority of law, because the State levies no occupation tax upon said business or calling, and such tax levied by the city is therefore forbidden by the Constitution of the State. W. & W. C. C., sec. 989; 2 Cool. on Tax., 209, 387; 2 Desty on Tax., 1384, et seq.; Burr. on Tax., 392; Dill. on Mun. Corp., secs. 357, 740, 763, 764.

*Upson & Bergstrom*, for appellee.—1. The ordinance of the city of San Antonio imposing a tax of $75 upon butchers who establish stalls for vending meats within the city, being a tax imposed upon all persons alike so establishing such stalls, irrespective of the locality within the city limits where established, is not open to the criticism of being unequal and ununiform, and is therefore valid and enforceable.

  2. By section 76 of the charter of the city of San Antonio, the city council is authorized to license, tax, and regulate all trades, professions, occupations, and callings, the taxing of which is not prohibited by the Constitution of the State; and there being no constitutional inhibition against taxing individuals for establishing stalls in any part of the State for vending meat, the ordinance in question is valid. City Charter of San Antonio, sec. 76; Hirschfield v. Dallas, 15 S. W. Rep., 124.

STAYTON, CHIEF JUSTICE.—This case originated in the Justice Court, and on appeal to the District Court judgment was rendered against appellants upon the following agreed case:

"1.  That plaintiffs, William Hoefling, Sr., and William Hoefling, Jr., are and were partners in business under the firm name of William Hoefling & Son, doing business as butchers in the city of San Antonio, Bexar County, Texas, at two separate establishments or private markets, upon their own property, and not in the market house of the city of San Antonio.

"2.  That said plaintiffs opened said private markets upon their own property, with the consent and approval of the city council of the city of San Antonio, under the provisions of the city ordinance hereinafter set out.

"3.  That the city of San Antonio maintains and for many years has had a public market, with stalls that are rented to individuals at certain rentals, with prices according to location and values fixed by the city council of San Antonio, but the market master does not collect said amount of $75 from butchers occupying stalls in said public market, in addition to such stall rents.

"4.  That the following ordinance, passed by the city council of the city of San Antonio, is the only ordinance by virtue of which the sum of money herein sued for was collected from plaintiffs, and paid by them under protest, to-wit:

"Section 20.  The city council may grant to individuals the right of establishing in any designated locality within the city stalls for the vending of meat, granting general market privileges; each person or firm granted such right shall pay therefor to the market master, for the use of the city, $75 per annum, quarterly in advance, and shall post the receipts in a conspicuous place in said stall.  The city council may revoke any grants made hereunder at any time deemed necessary.

"5.  That heretofore, to-wit, on the 1st day of April, 1891, plaintiffs were required by the market master named in said ordinance to pay to said city the sum of $37.50, being $18.75 on each one of said meat stands for three months license tax from April 1, 1891, to June 30, 1891.

"6.  That plaintiffs paid said tax under protest, and after the institution of a criminal proceeding in the Recorder's Court in the city of San Antonio, and before making said payment, duly notified the authorities of the said city of San Antonio that said payment of $37.50 was made under protest, and that suit would be brought for money so paid under protest.

"7.  That there is no question before the court as to sufficiency of the protest or as to the amount paid by plaintiffs, but that the only question before the court is the validity or invalidity of the ordinance aforesaid.

"10.  That there is no other ordinance of the city of San Antonio imposing any occupation tax or license tax upon butchers except the one embodied in this agreement.

"12.  That the sole question for the determination of the court is the validity of the aforesaid city ordinance, so that if the same is held valid,

judgment should be rendered for defendant, and if the same is held invalid, judgment should be rendered for plaintiffs."

The charter of the city, enacted on August 13, 1870, provides, that the mayor and council shall have power "to license, tax, and regulate merchants, commission merchants, hotels and boarding house keepers, restaurants, drinking houses or saloons, bar rooms, beer saloons, and all places or establishments where intoxicating or fermented liquors are sold; brokers, pawnbrokers, money brokers, real estate agents, insurance brokers, insurance agents, and auctioneers, and all other trades, professions, occupations, and callings, the taxation of which is not prohibited by the Constitution of the State, which tax shall not be construed to be a tax on property." Special Laws, 1870, p. 253.

Section 175 of the charter provides, that the city council "shall have power to levy and collect taxes, commonly known as licenses, upon trades, professions, callings, and other businesses carried on," and after enumerating many things and occupations that may be thus taxed, but not embracing butchers, it declares that "this enumeration shall not be construed to deprive the city council of the right and power to levy and collect other license taxes, and from other persons and firms, under the general authority herein granted."

Another section provides, "that if any person shall engage in any business, calling, avocation, or occupation which by ordinance is subject to a license tax, without having first obtained such license, he, she, or they shall be liable to imprisonment and fine of $10 for each day said violation of said ordinance shall continue." Sec. 178.

Another section provides, that the city council shall have power "to make such rules and regulations in relation to butchers as they may deem necessary and proper." Sec. 67.

Other sections give power to make such regulations to secure the health of the city, and to keep cleanly and in good order all places where offensive matter is liable to accumulate, and to enforce such regulations by fine and imprisonment. Secs. 49, 54, 62, 91.

Section 76 of the charter gives the power to license, tax, and regulate all occupations, trades, and professions; but it is evident that the power given to license such occupations is not the same as the power to tax them; nor are either of these powers the same as the power given to regulate them.

In a general sense, "a license is an official permit to carry on a business or trade or perform other acts which are forbidden by law except to persons obtaining such permit." Abbott.

This, however, is not the sense in which the word is used in the charter of the city of San Antonio, for there was no law in this State which prohibited the following of many of the occupations contemplated by the

charter, or of that of a butcher engaged in vending meats, unless a license was first obtained.

There are occupations, however, which, on account of their character, may prove hurtful to the public unless properly conducted; and although they are not prohibited by the common law nor by statute, it has been seen that the public welfare requires that they should to some extent be kept under some restraints; and to this end it has become usual to grant a permit to follow such occupations, and usually, to insure proper conduct of the business, an obligation to conduct it properly is required to be exacted before this permit is issued; but this is not always the case, and when not, if the business be not one to the conduct of which a privilege is necessary, the permit serves but little purpose other than to give information to the public authorities of the persons engaged in a given occupation, their places of business, and other like matters which will enable them the more readily to exercise over them such control as the law permits.

The power to license, however, does not confer a power to tax, by which we understand to be meant the power to take from the citizen a sum for the support of the government, whether that be national, State, or municipal.

It is usual, however, to exact a fee for the issuance of the permit; and it has sometimes been said, that a further sum might be demanded for a license, to be used to meet the necessary expenses of inspection and regulation of the business to be conducted under the license; but it seems to us that money exacted for the latter purpose has much the semblance of a tax.

It is said by Mr. Cooley: "As all delegated powers to tax are to be closely scanned and strictly construed, it would seem that when a power to license is given, the intendment must be that regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with sufficient certainty that the raising of revenue by means thereof was contemplated. If a revenue authority is what seems to be conferred, the extent of the tax, when not limited by the grant itself, must be understood to be left to the judgment and discretion of the municipal government, to be determined in the usual mode in which its legislative authority is exercised. * * * When the grant is not made for revenue, but for a regulation merely, a much narrower construction is to be applied. A fee for the license may still be exacted, but it must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers." Cool. on Tax., 597.

The fact that the charter does not in terms provide for the exaction of a license fee, and the further fact that it provides for the enforcement of

all police regulations by fine and imprisonment, are strongly persuasive that it was not intended the city should exact for license the sum demanded and received of appellants as a condition on which they might vend meats on their own premises, and that the sum demanded was demanded and received by the city under its power expressly given to levy and collect taxes upon occupations.   In fact, looking to the whole charter, it is apparent that the taxes, other than taxes on property, which the city is authorized to levy and collect, are occupation taxes, within the meaning of the Constitution.

It is said, that " concerning useful trades and employments, a distinction is to be observed between the power to ' license ' and the power to ' tax.'  In such cases the former right, unless such appears to have been the legislative intent, does not give the authority to prohibit, or to use the license as a mode of taxation with a view to remove; but a reasonable fee for the license and labor attending its issue may be charged." Dill. on Mun. Corp., 357.

Whether legislation authorizing the demand and reception of license fees for the grant of a permit to pursue a useful and lawful occupation ought not to be deemed included within the provisions of the Constitution now in force in this State regulating the collection of occupation taxes, may be a question on which there would be difference of opinion; but, looking to the charter of the city of San Antonio, we are of opinion that the money demanded and received from appellants was demanded and received under the power given to collect taxes on occupations.

The Constitution provides, that " all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax."   Const., art. 8, sec. 2.

This is as binding in case of occupation taxes levied by a municipal corporation as in such taxation levied by the State.

The agreement makes it clear that butchers who vend meats in stalls rented from the city do not pay the tax imposed on appellants, who conduct the same kind of a business at stalls on their own premises; and that the former pay only what is deemed a proper rental for the stall owned by and rented to them by the city, this varying with the location of the stall and its rental value.

It seems to be conceded by counsel for appellee, that the ordinance under which the tax was demanded and received from appellants applies to butchers who vend meats at the public market in stalls rented to them by the city, as well as to butchers who vend meats at stalls owned by themselves, and they seek to avoid the proposition that the tax levied on appellants is in violation of that part of the Constitution above quoted, by the following propositions:

" The intent of the city council is clearly expressed, and imposes a tax upon all persons who pursue the avocation of vending meat at a stall

used for that purpose anywhere within the city limits, and it nowhere appears in the ordinance that any individual pursuing the occupation of vending meat in a stall established for that purpose is exempted from paying the tax imposed. The fact that the market master of the city has not collected such tax from those persons having stalls within the city market house can not avail the appellants in their effort to have the ordinance declared invalid, for though the market master may have supposed, in acting as he did, that he was placing the proper construction upon the ordinance, yet neither this court nor the appellee is bound by any such construction. The ordinance imposes a tax upon all persons within the city having stalls for vending meat, and if the city official charged with the duty of collecting the tax, and thus carrying into effect the law of the city, fails in his duty, the proper remedy for appellant will be to apply to the courts of the country to compel the official to discharge his sworn duty.''

From the agreement we understand, that the city has not asserted the right to collect the occupation tax received from appellants from persons who pursue the same occupation in stalls rented from the city; and if the ordinance was intended to impose the same tax upon them as upon persons doing business as were appellants, then, in view of the broad powers conferred on the city to enforce the collection of all taxes it may lawfuly levy, to hold that it may lawfully collect occupation taxes from some persons, while others pursuing the same occupation were continuously permitted to escape such a tax by failure of the city to compel the proper officer to collect it, would be to hold that the city might accomplish by unlawful nonaction what it could not lawfully do by an ordinance declaring that the tax should be collected only from some persons engaged in the particular business.

Such persistent failure on the part of the city to cause to be collected from those who sold meats in the public market, would evidence as fully an intention not to subject them to the tax as would an ordinance expressly exempting them from it.

The Constitution requires that occupation taxes shall be equal and uniform, and this applies to the collection of such taxes as well as to the levy, and its command can not be evaded by an ordinance imposing the tax on all persons engaged in a given occupation, if there be no intention or effort to enforce it against a class designated by the place where they do business, or in any other manner.

An ordinance intended so to operate, or permitted by the city so to operate, would be an evasion of the letter and spirit of the Constitution, which requires such taxes to be equal and uniform, not only in the sense imposed as a tax upon a given occupation, but in its collection also.

The mere failure of the tax collector to collect a tax from some persons, pursuing the taxed occupation, from whom it might be collected,

would not invalidate the tax as to others; but if a city intentionally fails to compel its collector to collect from all who pursue such occupation, while it enforces collections from some, then this ought to be held to be unequal taxation, and the city held liable to refund.

This is not a case in which the citizen is attempting to restrain the collection of a tax, but is a case in which plaintiffs paid the sum claimed, under such coercion as is conceded to have been sufficient to entitle them to recover it if the tax was illegal; nor is it a case in which it can be claimed that those doing business in the stalls rented from the city were paying an occupation tax based on any classification, either legal or illegal.

If, however, the ordinance applies, and was intended to apply, only to those who might vend meats in stalls established on their own premises, which is probably what was intended, then the ordinance and tax collected under it were illegal, because in direct conflict with the Constitution, which would require the taxing of all persons in the city who pursued the same occupation, without reference to the place where the business was conducted, or would otherwise deny the right to tax any person engaged in that business.

It is claimed by appellants, that as the State has never required an occupation tax of persons engaged in the business on account of which the tax was demanded and received by the city from appellants, the city had no power to impose such a tax.

This proposition is based on the last paragraph of section 1, article 8, of the Constitution, which provides, that " the occupation tax levied by any county, city, or town, for any year, on persons or corporations pursuing any profession or business, shall not exceed one-half of the tax levied by the State for the same period on such profession or business."

The charter of the city, created prior to the adoption of the Constitution now in force, is broad enough to sustain such a tax; but if in conflict with the Constitution, it must be held to be, in so far, repealed, or to stand in subordination to the requirements of that instrument.

The purpose of so much of the Constitution as is quoted was evidently to place a limitation on the power of municipal corporations to levy and collect occupation taxes—to deny them the unrestricted power to tax any occupation.

Under the Constitution, the sum a municpal corporation may collect as a tax on a given occupation, can not " exceed one-half of the tax levied by the State for the same period on such profession or business;" and this necessarily involves the proposition, that the Legislature must determine that the occupation shall be taxed for the benefit of the State before a municipal corporation can tax it at all.

When the Legislature has declared that a named occupation shall be taxed, and has fixed the amount of the tax, then, and not before, has a

county, city, or town the power to tax that occupation; for the Constitution does not require occupations to be taxed, and only permits it when the Legislature deems it proper. Its failure to require such taxation for the benefit of the State is in effect a declaration that it is neither necessary nor proper for the use of municipal corporations. The measure of a municipal corporation's right to tax an occupation is made dependent on the sum the State may levy on the same occupation; and when the State has not taxed it at all, is it to be believed that it was the purpose of the people in such case to give to municipal corporations the power to tax the occupation as in the discretion of a municipal council might seem proper, while a limitation was placed on the amount such a corporation might levy in all cases in which the Legislature had declared it proper and necessary that the occupation should be taxed for the benefit of the State? It was not intended to confer on a municipal corporation the power to tax an occupation not taxed by the State. If the State levies no tax on the occupation, a municipal corporation can not levy or collect a tax, unless the proposition that the half of nothing is something can be maintained.

The Constitution wisely leaves it to the Legislature to determine what, if any, occupations shall be taxed, and this power is not so likely to be misused by the representatives of the people of the entire State as by the council of a single municipality.

In the case of Hirschfield v. City of Dallas, it seems to have been held that a municipal corporation might tax an occupation not taxed by the State (15 S. W. Rep., 124); but it seems to us that due effect was not given in the case to the provision of the Constitution before noticed, and the authorities cited in support of the opinion do not consider such a question.

If appellants had voluntarily paid the sum claimed as a tax, then they would not be entitled to recover it; but they paid it upon coercion, after the institution of criminal proceedings against them, and under the agreement of the parties are entitled to recover the sum so paid, together with costs incurred in all the courts.

Judgment of the court below will be reversed and here rendered in favor of appellants as above indicated.

*Reversed and rendered.*

Delivered June 10, 1892.