**CITY OF DALLAS et al. v. GILL et al.**
(No. 7872.)

(Court of Civil Appeals of Texas. Dallas. Dec. 15, 1917. Rehearing Denied Jan. 19, 1918.)

1. MUNICIPAL CORPORATIONS ⬤➡106(2) — ENACTMENT OF ORDINANCE — READING REQUIREMENT—"FRANCHISE"—"LICENSE."

It was not necessary that an ordinance regulating jitney busses be read at three regular meetings of board of commissioners, etc., as required by city of Dallas charter in the case of ordinances granting franchises; such ordinance not granting a franchise but a mere license and not naming any certain persons or grantees, but the grant including all persons wishing to engage in such business. A "license" is an official permit to carry on a business or trade or perform other acts forbidden by law except to persons obtaining such permit. The term "franchise" was not contemplated as applying to such regulation, as jitneys are not permitted to appropriate any part of streets to their exclusive use, as do railway, telegraph, telephone, and gas companies, to which the term "franchise" applies.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Franchise; License.]

2. MUNICIPAL CORPORATIONS ⬤➡614—REGULATION OF JITNEYS—ORDINANCE.

Under City of Dallas Charter, art. 2, § 2, subd. 1, empowering such city to enact and enforce ordinances necessary to protect health, life, and property, etc., and article 2, § 3, subd. 24, granting power to license, tax, and regulate all trades, occupations, and callings and to require bonds in such cases, and article 2, § 3, subd. 33, permitting regulation of motor vehicles, and article 2, § 7, subd. 4, giving power to regulate use of streets and alleys, an ordinance regulating and licensing jitney busses and requiring a surety bond by the operators was valid, and the fact that such ordinance prohibited passengers from riding on the doors of motor busses and that it denied the transfer of a license to another bus did not invalidate it; the commissioners having the power to do anything respecting such subjects that the Legislature itself could do. The provision relating to the giving of a bond making the operators liable to third parties for damage, etc., was not derogative of the common law, which by Rev. St. 1911, art. 5492, is declared to be the law in so far as not inconsistent with state laws and Constitution unless later repealed by the Legislature, since the Legislature, having empowered the city to control streets and license persons doing business thereon for profit, in effect repealed the common law relating thereto.

3. CONSTITUTIONAL LAW ⬤➡63(2) — REGULATION OF JITNEYS—LEGISLATIVE POWER TO CONFER AUTHORITY.

The Legislature had the power to confer authority on the city of Dallas to regulate and license jitney busses.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by D. H. Gill and others against the City of Dallas and others. Judgment for plaintiffs, and defendants appeal. Reversed, and judgment rendered for defendants.

C. F. O'Donnell, G. C. Adams, L. R. Callaway, Lee Richardson, and Royal R. Watkins, all of Dallas, for appellants. W. L. Crawford, Dwight L. Lewelling, and Muse & Muse, all of Dallas, for appellees.

RAINEY, C. J. This was a suit instituted by D. H. Gill and some 163 other plaintiffs, whose names appear in plaintiffs' petition as owners and operators of motor busses in the city of Dallas, for an injunction to restrain Henry D. Lindsley, mayor, Otto H. Lang, Manning B. Shannon, A. C. Cason, and R. L. Winfrey, commissioners of the city of Dallas, C. F. O'Donnell, city attorney of the city of Dallas, and J. W. Ryan, chief of police of the city of Dallas, and each of them, from enforcing the terms and provisions of an ordinance passed by the board of commissioners of the city of Dallas on the 5th day of January, A. D. 1917, prescribing regulations governing the operation of motor busses on the streets of the city of Dallas and prescribing regulations under which licenses for the operation of motor busses could be secured. On the 5th day of February, 1917, judgment was rendered by the Forty-Fourth judicial district court granting said injunction, enjoining and restraining defendants from enforcing, or undertaking, or attempting to enforce, any of the provisions of said ordinance, and decreeing and adjudging said ordinance to be void, and canceling and annulling the provisions thereof, to which action appellants duly excepted and gave notice of appeal.

[1] The first proposition we will consider

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

is the contention of appellees that the ordinance attacked constituted the grant of a franchise and was not passed in accordance with the provisions of the charter, because said ordinance was not read at three separate regular meetings of the board of commissioners, the last reading not to be less than 30 days from the first; that it was passed under the emergency clause, and went into effect at once. Said ordinance was passed as complained of, and the provision of the city charter regulating passage of ordinances granting franchises was not observed by the board of commissioners, and, if said ordinance grants a franchise in its strict sense as contemplated by the charter, then said ordinance was illegally passed and is therefore void; but the question arises: Is the ordinance a grant of a franchise, or is it a mere regulating ordinance for the government of the operations of the so-called jitneys? We think the latter purpose was intended and there was no intention to violate the charter. Subsection 2 of section 8 of article 11 of the city charter reads as follows:

"The city of Dallas shall have the power, subject to the terms and provisions hereof, by ordinance to confer upon any person or corporation the franchise or right to use the property of the city, as defined in the preceding section, for the purpose of furnishing to the public any general public service, including heat, light, power, telephone service, refrigeration, steam, or the carriage of passengers or freight within the said city and its suburbs, over the streets, highways and property of said city, or for any other purpose whereby a general service is to be furnished to the public for compensation or hire, to be paid to the franchise holder, whereby a right to, in part, appropriate the streets, highways or other property of the city, is necessary or proper; provided, that no franchise shall be granted by said city to any persons, firm or corporation to own, control or operate waterworks therein."

The term "franchise," as here used, was never contemplated by the lawmakers as applying to the regulation of jitneys operated over the streets of a city, for they in no wise are permitted to appropriate any part of the streets to their exclusive use. Street railways, telephone and telegraph, and gas companies, etc., appropriate certain parts of the street for the laying of tracks, placing poles, and placing wires, and for said purposes the term "franchise" applies to them and like enterprises, and the law, we think, only applies to and intends to grant licenses to those between which there is a marked distinction.

As before said, it was never intended to grant a franchise to the jitneys. The ordinance passed is designated a "license" in caption for the regulation of motor busses, etc., which the city had the right to pass.

In McQuillin on Municipal Corporations, in speaking of franchises, it is said:

"The fact that an ordinance is called a franchise, and that it is couched in terms frequently used in granting franchises, is not conclusive as to its character, since, if the provisions themselves are simply police regulations, they do not become so because they are so called." Section 1617.

In the same work it is also said:

"The term 'franchise' includes the term 'privilege,' but a privilege is not necessarily a franchise." Section 1614.

Again, in footnote at page 3364, it is said:

"The word 'franchise' has various significations, both in a popular and in a legal sense. The relation in which the term is employed controls its meaning." Lindsley v. Street Ry. Co., 200 S. W. 207, this day decided by this court.

In 19 Cyc. p. 1460, it is said:

"Like every other kind of property, a franchise must have a certain owner; it can exist only by grant, and a certain grantee is essential to a grant."

The ordinance here enjoined does not name any certain person or grantee, but its grant includes all persons who wish to engage in the jitney business. It imports to grant a license to any person so desiring and a "license" is defined by Bouvier, in his Dictionary (volume 1, 3d Ed.), as follows:

"A license * * * to carry on business or trade is an official permit to carry on the same or perform other acts forbidden by law except to persons obtaining such permit." Hoefling v. City of San Antonio, 85 Tex. 228, 20 S. W. 85, 16 L. R. A. 608.

It follows, we think, that the commissioners never intended to grant a franchise for the jitney business to any particular person, but only intended to grant to any person a license for conducting such a business and regulate such business, which the ordinance clearly imports to do. Said ordinance was passed regularly under its charter, and because it did not observe the requirements for the passage of the franchise it is not void, but is enforceable.

[2] The appellants group their first, fourth, fifth, sixth, seventh, and eighth assignments of error, and ask that they be considered together. The first is, in effect, that the court erred in holding that the ordinance assailed is null and void. Fourth, that the city of Dallas was without legislative power to require of the jitney operators a surety bond. Fifth, that the ordinance prohibiting passengers from riding on the doors of motor busses is unreasonable and discriminatory. Sixth, that the provision of the ordinance denying the transfer of a license to another bus is arbitrary, unreasonable, unjust, and the unlawful taking and confiscation of property. Seventh and eighth, granting an injunction restraining defendant from enforcing or attempting to enforce said ordinance. Under said assignments the first and second propositions are:

"(1) The city of Dallas holds the streets of the city in trust for the use of the public generally for the purposes for which they were dedicated, or otherwise acquired as public thoroughfares, and no person has a vested or property right to the use of such streets in the conduct of a private business for profit. (2) Under the express legislative authority conferred by the city charter, the city of Dallas has the power and authority to prescribe the regulations under

which its streets may be used in the conduct of a private business for profit."

The city of Dallas is duly chartered by the Legislature of Texas, and was created by it a body politic and endowed with a municipal government subject to "all duties and obligations now pertaining to or incumbent upon said city as a corporation, not in conflict with the provisions of this act, and shall enjoy all the rights, immunities, powers, privileges and franchises now possessed and enjoyed by said city and herein granted and conferred." By subdivision 1, § 2, art. 2:

The city of Dallas was empowered to "enact and to enforce ordinances necessary to protect health, life and property, * * * and to preserve and enforce good government, order and security of the city and its inhabitants, * * * and to enact and enforce any and all ordinances upon any subject; provided, that no ordinance shall be enacted inconsistent either with the laws of the state of Texas, or inconsistent with the provisions of this act; and provided further, that the specification of particular powers herein authorized shall never be construed as a limitation upon the general powers herein granted, it being intended by this act to grant and bestow upon the inhabitants of the city of Dallas full power of self-government, and it shall have and exercise all powers of municipal government not prohibited by this charter, or by some general law of the state of Texas, or by the provisions of the Constitution of the state of Texas."

Under the head of "Police Powers," art. 2, § 3, subdiv. 24, power was granted to said city of Dallas to license, tax, and regulate by ordinance all trades, occupations, and callings of any kind, and "to require the person or persons pursuing any business or occupation mentioned in this section to give all bonds in such amounts and under such conditions as the board of commissioners may prescribe." By subdivision 33 of said article it is "to regulate the use of automobiles, motor cars, motorcycles or any motor vehicle." By article 2, § 7, subdiv. 4, of said charter, the city of Dallas is given power to control and regulate the use of streets and alleys therein. In fact, it seems that the city is granted the right to make all laws or ordinances necessary for the government of said city that the Legislature of the state has the power to confer, not to conflict with the Constitution and other state laws. This being so, the trial court erred in holding the ordinance assailed as null and void. Such ordinance had for its object and purpose the regulation of the operation and use of jitneys over the streets in the city of Dallas. As said by Chief Justice Fly of the Court of Civil Appeals at San Antonio:

"The cases with unanimity decide that the Legislatures of states have full and complete control over the highways, streets, and alleys, and that such control may be delegated to municipalities, and it follows from such complete control that the use of the streets for the prosecution of any private business may be wholly denied, or granted with such provisions and regulations as may be deemed proper by the municipality."

The trial court erred in holding that the city of Dallas was without legislative power to enact an ordinance requiring a surety bond to be given by persons operating motor busses in the city of Dallas. We are of the opinion that this power was especially conferred by article 2, § 3, subdiv. 24. The court erred in holding that the provision of the ordinance was void for prohibiting passengers to ride on the door of cars and is unreasonable and discriminatory. The court also erred in holding that the ordinance was void in denying the transfer of a license for a motor bus to another and is arbitrary, unreasonable, and unjust and the unlawful taking and confiscation of property.

The following authorities by the Courts of Civil Appeals, and in most of which a writ of error has been denied by the Supreme Court of Texas, where similar ordinances containing similar provisions to the above, as also passed upon by the Court of Criminal Appeals, and as our statutes provide, that this court shall follow our Supreme Court, as well as our own judgment, we will adhere to said ruling as decisive of the questions there passed upon. Said authorities are: Booth v. City of Dallas, 179 S. W. 304; Greene v. San Antonio, 178 S. W. 6; Auto Co. v. Ft. Worth, 182 S. W. 685; Peters v. San Antonio, 195 S. W. 989; Southwestern Tel. & Tel. Co. v. Dallas, 174 S. W. 636; Brown v. Galveston, 97 Tex. 1, 75 S. W. 488. Many of the other states have passed upon ordinances regulating jitneys, and, as far as we have seen, the ordinances have been upheld. The authorities above named also uphold the legislative power of the city to pass such ordinances. In this connection, as said by the Supreme Court of West Virginia in Ex parte Dickey, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840:

"Under the broad power given by this charter, to grant, refuse, and revoke licenses to hotel keepers and operators of vehicles kept for hire, and to regulate them for the interest and convenience of the inhabitants of the city, the commissioners may do anything respecting these subjects that the Legislature itself could do, and, as we have shown, that power is almost unlimited."

In reference to the provision of the ordinance requiring an indemnity bond of jitney operators, the appellees contend, in effect, that it is derogative of the common law for the city to require such a bond making the operators liable to third parties for damages, etc., and relies on article 5492, R. S., which provides in effect for the common law of England in so far as not inconsistent with the laws and Constitution of this state to be the rule of decision unless altered or repealed by the Legislature.

[3] The Legislature having given the city of Dallas power to control its streets and to license persons doing business thereon for profit, it, in effect, repealed the common law as such action is inconsistent with the common law. Besides, the charter of Dallas provides that such bond may be required by the commissioners in regard to granting licenses.

Article 2, § 2, subd. 24. That the Legislature had the power to confer such authority on the city we think there is no question. Railway Co. v. Levy, 199 S. W. 513, opinion by this court November 17, 1917; St. Railway Co. v. Rapid Transit Ry. Co., 133 Tenn. 99, 179 S. W. 635, L. R. A. 1916B, 1143, Ann. Cas. 1917C, 1045.

The trial court erred in granting the injunction, and the judgment is reversed and here rendered for appellant.