

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

November 30, 1959

Mr. John C. White, Commissioner
Texas Department of Agriculture
Capitol Station
Austin, Texas

Opinion No. WW-749

Re: Whether the Texas Depart-
ment of Agriculture may
make refunds from the Spe-
cial Department of Agricul-
ture Fund under provisions
of House Bill 4, 3rd Called
Session, 56th Legislature.

Dear Mr. White:

The following is quoted from your recent letter:

"With reference to H.B. 4, 3rd Called
Session of the 56th Texas Legislature, we
have requested and attached in rider form a
paragraph enabling this Department to omit
the use of the Suspense Fund by allowing
refunds from the fund in which the revenue
was deposited. This rider reads as follows:

"'Any money deposited into the State
Treasury by the Department of Agriculture
either by mistake of fact, mistake of law,
in event of overpayment by the remitter, or
by any other reason which necessitates a re-
fund shall be refunded by warrant issued
against the fund in the State Treasury into
which such money was deposited and so much
for said refunds as is necessary is hereby
appropriated.'

"The Comptroller of Public Accounts
has stated that they will not honor this
rider as there is not basic authority on
which to set up the appropriation. In ana-
lyzing some of our original funds, we find
that there are definite authorities to issue

refund warrants from the State Treasury
and charge to the fund in which it was de-
posited. This however does not cover all
of the funds which we have accumulated in-
to one basic operating fund known as the
Special Department of Agriculture Fund.

"In order to determine our legality
in requesting and operating from such a
rider, we request your opinion as to whether
or not we may make such refunds from our
special fund."

While there is no apparent conflict between the
statute establishing the Departmental Suspense Account
and the above rider, you have indicated that the rider
was obtained in order to omit the use of the Suspense
Fund. Hence, we observe that the Departmental Suspense
Account has been established by general legislation,
Article 4388, Vernon's Civil Statutes, which the above
rider is powerless to amend or repeal. A rider attached
to an appropriation bill cannot amend or repeal an exist-
ing general law. State v. Steele, 57 Tex. 200 (1882),
Linden v. Finley, 92 Tex. 451, 49 S.W. 578 (1899); Moore
v. Sheppard, 144 Tex. 537, 192 S.W. 2d 559 (1946); At-
torney General's Opinions V-412 (1947); V-1304 (1951).

Article 4388, Vernon's Civil Statutes provides in
part as follows:

"The State Treasurer shall receive
daily from the head of each Department, each
of whom is specifically charged with the duty
of making same daily, a detailed list of all
persons remitting money the status of which
is undetermined or which is awaiting the time
when it can finally be taken into the Treasury,
together with the actual remittances which the
Treasurer shall cash and place in his vaults or
in legally authorized depository banks, if the
necessity arises. . . . As soon as the status
of money so placed with the Treasurer on a de-
posit receipt is determined, it shall be trans-
ferred from the suspense account by placing the
portion of it belonging to the State in the
Treasury by the issuance of a deposit warrant, and
the part found not to belong to the State shall be
refunded. . . ."

Therefore, moneys "the status of which is undetermined or which are awaiting the time when they can finally be taken into the Treasury," must still be kept in the Departmental Suspense Account regardless of the above rider.

Turning now to the question of pre-existing law, Section 44 of Article III of the Texas Constitution prohibits the Legislature from granting "any money out of the Treasury of the State . . . on a claim . . . when the same shall not have been provided for by pre-existing law."

Article 4386c, Vernon's Civil Statutes, provides in part as follows:

> "Section 1. All moneys now on deposit in the State Treasury to the credit of the Citrus Fruit Inspection Fund, the Pure Bred Cottonseed Inspection Fund, and 2-4-D License Fund, the Herbicide Fund, the Texas Vegetable Certification Fund, the Seed Laboratory Fee Account, the Nursery Inspection Fee Account, the Weights and Measures Fee Account, the Charter Filing Fee Account, the Anti-freeze Registration Fee Account, the Insecticide and Fungicide Fee Account, Fees for Milk and Cream Tester Licenses, the State Department of Agriculture Grain and Field Seed Warehouse Inspection Fund, and the Texas Seed Act Fund, together with all moneys owing or due said Funds and Fee Accounts, shall be transferred, deposited, and consolidated into a single Fund, in the State Treasury to be known as the Special Department of Agriculture Fund. As amended Acts 1955, 54th Leg., p. 539, ch. 168, § 1.

> "Sec. 2. All moneys collected or received by the Texas Department of Agriculture, after the effective date of this Act, from any source now requiring that such moneys be deposited in the State Treasury to the credit of any of the Funds or Fee Accounts named in Section 1 of this Act, shall be deposited in the State Treasury to the credit of the Special

Department of Agriculture Fund.

"Sec. 3.     The Special Department of
Agriculture Fund shall be used for the aggre-
gate purposes for which the Funds and Fee
Accounts named in Section 1 are now directed
by law to be used."

Since Section 3 of the above statute provides that
the Special Department of Agriculture Fund shall be used
for the aggregate purposes for which the Funds and Fee
Accounts named in Section 1 of the Act are now directed
by law to be used, the various statutes establishing such
funds are looked to first in order to determine whether
there is pre-existing law in support of the rider.

The moneys paid into the funds in question are de-
rived from license and inspection fees. In none of the
statutes establishing such funds do we find specific au-
thority for refunds. These statutes direct that the funds
be used in the administration and enforcement of the par-
ticular Acts establishing each such fund.

However, Article 4836c, Vernon's Civil Statutes, au-
thorizes the funds transferred to the Special Department
of Agriculture Fund to be "used for the aggregate purposes
for which the Funds . . . are now directed by law to be
used." That Article does not say "directed by _statute_ to
be used."

The term "pre-existing law" does not necessarily mean
pre-existing statutory law: a common-law right is a right
under pre-existing law. _Austin National Bank v. Sheppard_,
123 Tex. 272, 71 S.W. 2d 242 (1934).

It is the law of this State, founded upon common law
rights, that license fees and taxes paid to the State because
of (1) fraud or (2) mistake of fact or (3) duress may be re-
covered from the State, there being a legal and valid obli-
gation on the part of the State to pay such claims, although
the rule is to the contrary where such payments to the State
have been made due to a mistake of law. _Hoefling v. City of
San Antonio_, 85 Tex. 228, 20 S.W. 85 (1882); _National Bis-
cuit Co. v. State_, 134 Tex. 293, 135 S.W. 2d 687 (1940);
_Austin National Bank v. Sheppard_, supra; _Ostrum v. City of
San Antonio_, 71 S.W. 304 (Civ. App. 1902, error dism. w.o.j.);

32 Tex. Jur. 741, Payment, Sec. 55; Attorney General's Opinions 0-6974 (1945); 0-6282 (1945);0-5739 (1944).

From the foregoing it is apparent that the above quoted portion of House Bill 4 is supported by pre-existing law to the extent that it makes an appropriation to refund moneys paid under mistake of fact. It is equally clear that the appropriation is not supported by pre-existing law and is therefore unconstitutional to the extent that it attempts to appropriate for refunds of moneys paid under mere "mistake of law" unaccompanied by the other circumstances which would authorize a refund.

Here we note that the "mistake of fact" which permits a refund must be one on the part of the person who made the initial payment to the State rather than a mere mistake on the part of the Department of Agriculture as we find no pre-existing law making the State liable to its agents for moneys paid to the agent by another and deposited in the State Treasury due to mistake on the part of the agent only. The rider in question is construed as referring to mistakes on the part of the initial payer.

In Attorney General's Opinion 0-6974 this Department was called upon to decide whether the following appropriation was supported by pre-existing law:

"  . . . any money paid into the State Treasury by the Board of Hairdressers and Cosmetologists either by mistake of fact or mistake of law, shall be refunded by warrant issued against such fund in the State Treasury, and so much of said fund as is necessary is hereby appropriated for such purpose."

The provision was treated as applying to refunds for erroneous payments made by those who paid fees to the Board rather than mere mistakes on the part of the Board in depositing its collections into the State Treasury.

Further, the opinion held that the appropriation was supported by pre-existing law to the extent that it authorized the issuance of warrants to pay claims for the refund of moneys paid under fraud, mistake of fact or duress.

In the present situation "overpayment of the remitter" is also made a ground for refund. It is apparent from the

authorities already cited that an appropriation for refunds due to mere "overpayment by the remitter" is not supported by pre-existing law. There must be more. The overpayment would have to be caused by fraud, mistake of fact or duress in order to be refunded by the State. To the extent that it is so caused, the appropriation for refunds for "overpayment" is constitutional. To the extent that the "overpayment" is not so caused, the provision is not supported by pre-existing law and is unconstitutional.

The subject rider also purports to make an appropriation for refunds of moneys deposited into the State Treasury "by any other reason which necessitates a refund". This phrase we construe as meaning any other legal and valid ground for refund. As thus interpreted it is not in violation of Section 44, Article III of the Texas Constitution. If an Act is fairly susceptible of two constructions, one of which would render the Act constitutional and the other of which would render it unconstitutional, the former must prevail. 39 Tex. Jur. 207, Statutes, Sec. 111.

## SUMMARY

The portion of House Bill 4, Acts of the 56th Legislature, Third Called Session, 1959, which makes an appropriation for the refund of moneys deposited into the State Treasury "either by mistake of fact, mistake of law, in the event of overpayment by the remitter, or by any other reason which necessitates a refund, cannot amend or repeal Article 4388, Vernon's Civil Statutes, providing for the Departmental Suspense Account. Said provision of House Bill 4 is supported by pre-existing law to the extent that it applies to refunds of money paid to the State due to fraud, mistake of

fact or duress and is not support-
ed by pre-existing law to the extent
that it attempts to do more.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Henry G. Braswell
Henry G. Braswell
Assistant

HGB:ms

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Gordon C. Cass
Jot Hodges, Jr.
Charles D. Cabaniss
John Reeves

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore