TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00415-CV







Robert Charles Graves, Appellant



v.



Honorable Dan Morales, State Attorney General; Honorable John Sharp,


Comptroller of Public Accounts; and Martha Whitehead,


State Treasurer, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 94-14229, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING







PER CURIAM


 Appellant Robert Charles Graves appeals from a trial court order granting appellees
Dan Morales, John Sharp and Martha Whitehead's motion for summary judgment and denying
his motion for summary judgment. Graves, an attorney in private practice, brought a declaratory
judgment suit challenging the Comptroller's administration of the Attorney Occupation Tax. (1) See
Tex. Tax Code Ann. §§ 191.141-.145 (West Supp. 1996). He sought a declaration that the tax
is unconstitutional, relief from the lien imposed on his property for his failure to pay it, and
refund of any taxes, interest, and penalties paid. We will affirm the trial-court judgment.



ANALYSIS


 By points of error one and three, Graves challenges the trial court's grant of
summary judgment in favor of the Comptroller. The standards for reviewing a motion for
summary judgment are well established: (1) The movant for summary judgment has the burden
of showing that no genuine issue of material fact exists and that it is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable
inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Nixon
v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 The legislature imposed the challenged tax on each attorney licensed to practice law
in the state. Tex. Tax Code Ann. §§ 191.141, .142 (West Supp. 1996). The only attorneys
exempted by statute are those who are at least seventy years old or who have assumed inactive
status. Tex. Tax Code Ann. § 191.144 (West Supp. 1996).

 At issue is the Comptroller's practice of not physically collecting the tax from
attorneys who are directly or indirectly employed by the state. By informal rule, the Comptroller
keeps track of each such employee; and, having determined that the state may legitimately pay the
occupation tax for its employees, he considers the tax that would be collected from the state
employers and then remitted to the general revenue fund and the foundation school fund a "wash."

 Graves claims that the Comptroller has effectively "exempted" state-employed
attorneys from the tax. He argues that exempting one group of attorneys from the tax results in
an inequitable assessment and collection that violates federal and state equal protection clauses,
and Article 8, section 2 of the Texas Constitution. See Tex. Const. Art. 8, sec. 2; Hoefling &
Son v. City of San Antonio, 85 Tex. 228, 234, 20 S.W. 85, 88 (1892). Article 8, section 2
provides that "[a]ll occupation taxes shall be equal and uniform upon the same class of subjects
within the limits of the authority levying the tax."

 We agree that systematic inequities in collecting an occupation tax would violate
the stricture of article 8, section 2. See Hoefling, 20 S.W. at 88; Bullock v. Pioneer Corp., 774
S.W.2d 302, 305 (Tex. App.--Austin 1989, writ denied); but see Ana-Log, Inc. v. City of Tyler,
520 S.W.2d 819, 824 (Tex. Civ. App.--Tyler 1975, writ ref'd n.r.e.) (prohibition does not apply
to collection of taxes); Edinburg Improvement Ass'n v. City of Edinburg, 191 S.W.2d 752, 754
(Tex. Civ. App.--San Antonio 1945, no writ) (settling delinquent taxes for less than assessed
amount does not violate constitution). However, we conclude that the Comptroller's decision to
offset monies that would be collected by monies that would be dispersed does not create an
unconstitutional "exemption," and is rationally related to its purpose to efficiently collect and
remit taxes.



The State's Authority to Pay Taxes for Its Employees 

 The Comptroller, in formulating his rule, relied on several Attorney General
opinions concluding that state agencies could legitimately pay occupation taxes for their
employees. See Op. Att'y Gen. No. JM-1063 (1989); Op. Att'y Gen. No. LO-88-79. We agree
with the Attorney General. Article III, sections 51 and 52 of the state constitution prohibits the
expenditure of public funds for private gain. Tex. Const. art. III, sec. 51, 52. The purpose of
the constitutional provisions barring transfers to private individuals is to prevent the gratuitous
application of public funds to any individual. Edgewood Indep. Sch. Dist. v. Meno, 893 S.W.2d
450, 473 (Tex. 1995). But the Constitution does not invalidate an expenditure which incidentally
benefits a private interest if it is made for the direct accomplishment of a legitimate public
purpose. Brazoria County v. Perry, 537 S.W.2d 89, 90 (Tex. Civ. App.--Houston [1st Dist.]
1976, no writ). "A transfer of funds for a public purpose, with a clear public benefit received in
return, does not amount to a lending of credit or grant of public funds in violation of article III,
sections 51 and 52." Edgewood, 893 S.W.2d at 473-74.

 Here, public funds are transferred to public employees to recompense them for a
tax they must pay as a consequence of practicing their profession. The state benefits from the
continued employment of professionals in its service. It is no more a transfer of public funds for
private purposes than is the employee's paycheck. See Brazoria County, 537 S.W.2d at 90 (funds
paid to person while attending law enforcement course was expenditure for direct accomplishment
of legitimate public purpose).



The Comptroller's Ability to Offset Taxes Due and Taxes Paid

 Next we examine the Comptroller's decision that the taxes that would be paid by
state employers should simply be offset by the taxes to be remitted to the state treasury. The
Comptroller is authorized to formulate rules to implement tax collection. See Tex. Tax Code
Ann. § 111.002 (West 1992). The rules need not be published to be valid. See Southwest Airlines
Co. v. Bullock, 784 S.W.2d 563, 567 (Tex. App.--Austin 1990, no writ). The Comptroller's rule
is his attempt to deal administratively with the imposition of the new tax, the state employer's
ability to pay it for their employees, and the most efficient way to collect and remit it.

 Courts must uphold legislative administrative rules if they are reasonable. Bullock
v. Hewlett-Packard Co., 628 S.W.2d 754, 756 (Tex. 1982); Chrysler Motors Corp. v. Texas
Motor Vehicle Comm'n, 846 S.W.2d 139, 142 (Tex. App.--Austin 1993, no writ). The rules need
not be wise, desirable, or even necessary. Hewlett-Packard Co., 628 S.W.2d at 756. The rules
need only be based on some legitimate position by the administrative agency involved. Id. 
Administrative convenience is a proper justification for a rule. Id.; Chrysler Motors Corp., 846
S.W.2d at 143.

 The Comptroller's position is that keeping track of the attorneys employed by state
employers, and netting the tax owed by the state with the tax due to the state, is an efficient
method of collecting the tax. We conclude that that is a legitimate position to take and one that
is consistent with his authority. We overrule points of error one and three.



Relief Requested

 By point of error two, Graves challenges the trial court's denial of his motion for
summary judgment. Even if we had found that the Comptroller's interpretation violated the
constitutional requirement of uniformity, Graves did not prove his entitlement to summary
judgment because he offered no proof that he was entitled to be relieved of his tax burden.

 The Texas Supreme Court has held that the government does not lose its right to
tax one group simply because its officers failed to assess other groups that were similarly taxable. 
See State v. Federal Land Bank of Houston, 329 S.W.2d 847, 850 (Tex. 1959). Federal Land
Bank is not squarely on point because it involved unequal assessments under the Article 8, section
1 prohibition against unequal property taxes. But we hold that the rationale also applies to
unequal collection practices under the Article 8, section 2 prohibition against unequal occupation
taxes.

 To obtain personal relief, the taxpayer must show not only that the plan was
arbitrary and illegal but also that it caused him substantial injury. See id. To prove that he has
been substantially injured, the taxpayer must prove that his taxes are excessive or substantially
higher by virtue of the omission of the tax on the other group. Id.; see also City of Arlington v.
Cannon, 271 S.W.2d 414, 417 (Tex. 1954) (must show substantial injury to be entitled to relief
even to the extent of the excess tax); American Bank & Trust Co. v. Dallas County, 679 S.W.2d
566, 569 (Tex. App.--Dallas 1984, no writ) (taxpayers not entitled to injunctive relief without
proof that lower tax would be due). Graves did not present any evidence to show that his tax was
higher than it would have been if the Comptroller had not decided to offset the taxes due and
payable of state-employed attorneys.

 Graves relies on Pullman Palace-Car Co. v. State, 64 Tex. 274 (1885), to support
his plea to void the tax as to him. Pullman is distinguishable because the statute evaluated in that
case was discriminatory on its face: it specifically exempted one group of potential taxpayers. The
Pullman court reasoned that because it did not have the power to assess the excluded group, it
would exercise the only power it had, which was to prevent collection of an unconstitutionally
inequitable tax.

 Here, of course, the statute is regular on its face; the only issue is the
Comptroller's collection practice. Graves is not entitled to the personal relief he seeks in the
absence of proof that the tax he paid was excessive. (2) We overrule point of error two.



CONCLUSION


 We conclude that the trial court did not err in granting appellees' motion for
summary judgment or in denying appellant's. We affirm the trial-court judgment.


Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: May 1, 1996 

Publish

1.   The Attorney Occupation Tax was administered by the Comptroller until 1995. In
1995, responsibility for collecting the tax was transferred to the Texas Supreme Court. 
Act of May 10, 1995, 74th Leg., R.S., ch. 66, § 1, 1995 Tex. Gen. Laws 444, 445
(effective June 1, 1995) (codified at Tex. Tax Code Ann. § 191.1431 (West Supp. 1996)). 
However, the former law was continued in effect for the collection and enforcement of
taxes due as of the effective date of the act. Id., § 3.
2.   Had we found the Comptroller's practice unconstitutional, it appears that proper
relief would have been a mandamus ordering him to physically collect the tax from
attorneys employed by the state. Cf. Hoefling, 20 S.W. at 88 (parties stipulated that proper
relief would be mandamus). However, only the Texas Supreme Court can issue a writ to an
officer of the state government. Tex. Gov't Code Ann. § 22.002(c) (West 1988); Hargett v.
McDaniel, 717 S.W.2d 688, 689-90 (Tex. App.--Texarkana 1986, no writ); American Nat.
Bank v. Sheppard, 175 S.W.2d 626, 627-28 (Tex. Civ. App.--Austin 1943, writ ref'd w.o.m.).