**Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, Appellant,**

v.

**PIONEER CORPORATION, Appellee.**

**No. 3–87–078–CV.**

Court of Appeals of Texas, Austin.

June 14, 1989.

Rehearing Denied Aug. 2, 1989.

Jim Mattox, Atty. Gen., William E. Storie, Asst. Atty. Gen., Austin, for appellant.

Gilbert J. Bernal, Jr., Geoffrey Amsel, Shapiro, Edens & Cook, Austin, for Mesa Operating Ltd. Partnership, Successor to Pioneer Corp.

Thomas M. Pollan, Bickerstaff, Heath & Smiley, Austin for appellee/intervenor, City of Lubbock.

Before SHANNON, C.J., and GAMMAGE and SMITH *, JJ.

GAMMAGE, Justice.

Bob Bullock, Comptroller of Public Accounts, appeals from a judgment rendered in favor of Pioneer Corporation (Pioneer) and the City of Lubbock granting a refund for taxes paid under the gross receipts tax on the distribution and local sale of natural gas. Tex.Tax Code Ann. § 182.021, *et seq.* (1982).[1] We will reverse the judgment.

Pioneer sued for a refund of gross receipts taxes paid from January 1, 1977 through December 31, 1983 by Pioneer and its predecessor, Pioneer Natural Gas Company (PNGC). Tex.Tax Code Ann. § 112.151, *et seq.* (1982). The City of Lubbock intervened to protect its interest. On June 30, 1986, Pioneer ceased to exist and Mesa Operating Limited Partnership succeeded to all interests of Pioneer, including this lawsuit.

Pioneer provided both gas transmission and distribution services to the City of Lubbock. Pioneer's transmission and distribution functions were separated into two divisions, both belonging to PNGC. In 1981, PNGC became Pioneer Corp.; the transmission division became known as Westar Transmission Co. (Westar), a division of Pioneer; and the distribution division became known as Energas Company (Energas), also a division of Pioneer. Westar delivered gas via transmission pipelines to the city gate. Energas delivered gas via distribution pipelines from the city gate to various residential and small industrial customers. Westar also directly delivered gas via two separate transmission pipelines to the City of Lubbock's Holly Avenue Power Plant (through the Holly Avenue line) and three industrial customers (through the Slaton line). The delivery of gas through these last two pipelines is the subject of this lawsuit.

Traditionally, there are three categories of gas utilities, depending on the type of business in which each engages: 1) producing, 2) transporting, and 3) distributing and selling. *Thompson v. United Gas Corp.*, 190 S.W.2d 504, 509 (Tex.Civ.App.1945, writ ref'd). Each category is taxed by different statutes and for different purposes, though all use pipelines to conduct their

---

\* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003 (Supp.1989).

1. Sections 182.021 and 182.022 were formerly Tex.Tax–Gen.Ann. art. 11.03, codified in 1982 without substantive changes. Though taxes in this suit were partially collected under the uncodified law, for purposes of this opinion we will cite to only §§ 182.021 and 182.022.

business. As the gas industry evolved, many companies expanded their operations to include more than one of these businesses. Distribution companies are currently taking an increasing role in the transportation of gas to the customer's point of use. 1 Regulation of the Gas Industry § 16.01 (1988).

A company engaging in the transmission business is taxed under the Cox Act, Tex. Rev.Civ.Stat.Ann. art. 6050, *et seq.* (1962). The Cox Act imposes an occupation tax collected for the purpose of regulating the gas transmission industry. *See* Comment, *The Cox Act: To Tax or Not to Tax,* 17 Houston L.Rev. 1023 (1980).

Westar is classified as a gas utility company under the Cox Act and pays tax on its gross receipts pursuant to Tex.Rev.Civ. Stat.Ann. art. 6060 (1962). The article 6060 gross receipts tax is administered by the Railroad Commission. In calculating this tax, the Railroad Commission treats Westar as a separate taxpaying entity.

Distribution companies are taxed under Tex.Tax Code Ann. §§ 182.021, 182.022 (1982), an occupation tax imposed for operating a utility company in the business of distribution. A "utility company" is defined as

> [a] person who owns or operates a gas ... works used for local sale and distribution located within an incorporated city or town in this state.

The term "person" includes any legal entity such as individuals, companies, corporations and associations. The tax rate is a percentage of the gross receipts "from business done" in the incorporated city or town with a population of more than 1,000. "Business" means the providing of gas.

Energas is classified as a gas utility under Tax Code § 182.021, and pays taxes on

its gross receipts under § 182.022. This gross receipts tax is administered by the Comptroller to raise revenues for the general fund. Tex.Tax Code Ann. § 101.009 (Supp.1989).

The disputed issue in this case is the classification of the Holly Avenue and the Slaton lines belonging to Westar. For purposes of safety and regulation, the Railroad Commission classifies these lines as transmission. Pioneer pays taxes under the Cox Act on its gross receipts from Westar for the business of transmission. The Comptroller classified the business from these lines as a public utility under § 182.021, and taxed the gross receipts for gas delivered through the lines to the four industrial consumers from 1977 to 1983.[2]

Pioneer pleaded that 1) the Holly Avenue and Slaton lines are not a gas works under § 182.021, and the distribution occupation tax under § 182.022 is inapplicable; 2) the delivery of gas to the industrial consumers through these two lines is only one activity, and taxing their functions under both the Cox Act and § 182.022 constitutes double taxation; 3) Pioneer is denied equal protection of the law under the United States Constitution because the Texas Legislature classified the gas industry into three distinct businesses on which taxes should be mutually exclusive—taxing these lines for both transmission and distribution functions imposes unequal and non-uniform taxation against Pioneer; 4) the doctrine of "primary jurisdiction" precludes the Comptroller from classifying business from these lines as distribution because the Railroad Commission regulates these lines as transmission pipelines; and 5) the Comptroller incorrectly concluded that operations on these lines were of the same na-

**2.** From January 1, 1977 through December 31, 1983, Pioneer, through its divisions PNGC and Westar, sold gas directly to Lubbock Feed Lots, Inc., off the Slaton line. From January 1, 1977 through October 31, 1982, Pioneer, through these same divisions, sold gas directly to Owens–Corning Fiberglas, Inc. off the Slaton Line. From May 1, 1978 through May 31, 1982, Pioneer, through these same divisions, sold natural gas directly to Lubbock Beef Processors, Inc., also off the Slaton line. When the contracts with these customers terminated, Pioneer did not obtain new customers.

From January 1, 1977 through November 18, 1983, Pioneer, through PNGC and Westar, sold gas off the Holly Avenue line directly to the Holly Avenue Plant owned by the City of Lubbock. In 1983 the City of Lubbock moved its point of sale outside the city limits of Lubbock, taking the sale outside of the § 182.022 tax classification.

ture as the operations of the gas company held liable in Tex. Att'y Gen.Op. No. JM–150 (1984).

After a bench trial, the court entered judgment for Pioneer upon stipulated tax payments. The Comptroller asserts in points of error three, four and five that the trial court erred as a matter of law in concluding the Legislature did not intend that the Cox Act and § 182.022 taxes be levied on the same gross receipts, that the Holly Avenue and Slaton lines did not engage in the business of distribution, and that the Railroad Commission's regulation of these lines as transmission lines invokes the doctrine of primary jurisdiction. Because these points are dispositive, we will not address the remaining points.

The Texas Constitution provides that occupation taxes may be levied as long as they are equal and uniform within the classification of subjects. Tex.Const.Ann. art. VIII, § 2 (Supp.1989); *Texas Co. v. Stephens*, 100 Tex. 628, 103 S.W. 481, 485 (1907). A failure to compel the collection of taxes from all subjects of the same class is a violation of the Constitution. *Hoefling v. City of San Antonio*, 85 Tex. 228, 20 S.W. 85, 88 (1892); 1 Cooley, The Law of Taxation § 269, at 572 (4th ed. 1924). "Occupation taxes are levied because the persons specified are engaged in particular, defined businesses, and are laid upon the carrying on of those businesses." *Stephens*, 103 S.W. at 484. The same person or corporation may engage in several different businesses and be taxed on each. *Id.* at 485. Because an entity that engages in two taxable occupations is a member of two distinct classes, a failure to collect both occupation taxes from such a company would violate the constitutional requirement of equal and uniform treatment within each class. In application, if gross receipts are not apportioned between the occupations or separated in some way, the same gross receipts may be taxed twice, once by each occupation tax, without constituting double taxation. Comment, 17 Houston L.Rev. at 1043.

Even if the transmission and distribution of gas through a pipeline are for all practical purposes simultaneous, they are essentially separable and distinct operations. *El Paso Electric Company v. Calvert*, 385 S.W.2d 542, 545 (Tex.Civ.App. 1965, writ ref'd.). We conclude that any taxable entity which functionally engages in both transmission and distribution occupations, will be liable for taxes under both the Cox Act and Tax Code § 182.022.

Pioneer argues that the Holly Avenue and Slaton lines did not operate as a "gas works" as required in § 182.022. Pioneer also argues that the delivery and sale of gas to the four industrial consumers off of the Holly Avenue and Slaton lines did not constitute "distribution" as required in § 182.021. We disagree.

The term "gas works" includes not only a plant where gas is manufactured or processed, but also a system of "pipes through which gas flows and is delivered to the premises of consumers." *Eddins–Walcher Butane Company v. Calvert*, 156 Tex. 587, 298 S.W.2d 93, 96 (1957). The term "distribution" means "the transfer of possession of gas to various individuals or concerns in the city." *Utilities Natural Gas Co. v. State*, 133 Tex. 313, 128 S.W.2d 1153, 1155 (Tex.Comm.App.1939, jdgmt adopted). The court in *Utilities Natural Gas* determined, however, that distribution did not include the delivery of gas by a pipeline to a *single* customer in a city. The Attorney General interpreted *Utilities Natural Gas* to mean that, though a pipeline company which sells to only one industrial customer within a city is not liable for the distribution tax, a company which sells to more than one industrial consumer is liable. Att'y Gen.Op. No. V–1084 (August 17, 1950); *see also* Att'y Gen.Op. No. V–994 (February 3, 1950).

Pioneer owned a system of transmission lines and used one line to sell gas to Energas at the city gate. Energas in turn distributed the gas to residential and small industrial consumers.[3] Pioneer also sold

---

**3.** The city gate is also known as a gate station, which is defined as a location at which gas

changes ownership, from one party to another, neither of which is the ultimate consumer. 8

gas to the City of Lubbock's Holly Avenue Plant and three other industrial consumers through the Holly Avenue and Slaton lines. The gas in these latter two lines was distributed through pipelines tapped into the transmission lines, to and through meter stations, and then through a pressure reduction facility to the industrial consumers. Three of Pioneer's witnesses [4] testified that the distribution function is not limited to pipelines that go through the city gate.

Because a gas works may be any system of pipes which delivers gas to a consumer, and because delivering gas to more than one consumer within a city constitutes a distribution function, we conclude the delivery of gas to the four industrial consumers through the Holly Avenue and Slaton lines is distribution and is taxable under § 182.022.

Pioneer further asserts that the Railroad Commission's classification of the Holly Avenue and Slaton lines as transmission invokes the doctrine of primary jurisdiction, set out in *Bullock v. Shell Pipeline Corp.,* 671 S.W.2d 715 (Tex.App.1984, writ ref'd n.r.e.), and prohibits the Comptroller from classifying the lines' function as distribution.

In *Shell Pipeline,* Shell sued the Comptroller for a refund of use taxes paid pursuant to a tax on the storage of pipe brought from outside the state, delivered directly to a construction site, strung along a right of way, and used for transporting oil products. Shell asserted it was exempt from this tax because a statute exempted "the use, in this State, of tangible personal property which is acquired outside this State and which is moved into this State for use as a licensed and certificated carrier of persons or property." Tex. Tax–Gen.Ann. art. 20.04(G)(3)(a) (now codified at Tex.Tax Code Ann. § 151.330(c) (1982)). The Railroad Commission issued Shell a permit to transport oil products by pipelines, and the trial court concluded the pipelines were carriers of property within the meaning of

the exemption. The Comptroller argued on appeal that the Railroad Commission had no jurisdiction to issue the permit to Shell. In response to this collateral attack, this Court stated

> [i]n general, in the case of a regulated industry, primary and plenary jurisdiction is vested in the agency having general powers of regulation over that industry. Other state agencies should recognize the validity of the orders of the primary agency.

*Shell Pipeline,* 671 S.W.2d at 719. Because the Railroad Commission's issuance of a permit classifying the pipelines as "carriers of property," thereby entitling Shell to an exemption, was mutually exclusive of the Comptroller's authority to tax Shell, the Railroad Commission's primary jurisdiction controlled. Such, however, is not the case before us.

The Railroad Commission considers the size of a pipe and the pressure of gas in regulating the pipes for safety purposes, and also determines whether a pipe functions as a transmission line for the purpose of the Cox Act tax. These two determinations are unrelated and independent of the Comptroller's determination, pursuant to Tax Code § 182.021, whether a pipeline functions as a distribution line. A single pipeline may be used as both a transmission line to *transport* gas from a gathering point, and a distribution line to *deliver* gas to ultimate consumers. We conclude the Comptroller's determination in this case does not violate the Railroad Commission's jurisdiction, and the doctrine of primary jurisdiction is inapplicable.

Points of error three, four and five are sustained. The judgment of the trial court is reversed and judgment is rendered that Pioneer Corporation take nothing on its claim for refunds of taxes.

---

Williams & Meyers, *The Manual of Oil & Gas Terms* 406 (1987).

**4.** The three witnesses are Lonnie Richmond, an employee of Pioneer, Charles Sauer, a retired employee of Pioneer, and Steve Newberry, the director of auditing for the Gas Utilities Division of the Railroad Commission.