OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS


December 8, 1999

The Honorable Jim Solis
Chair, Committee on Economic Development
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0150

Re: Whether an ad valorem tax may be assessed
on travel trailers (RQ-0037-JC)

Dear Representative Solis:

You have asked this office whether the imposition of real property taxes on travel trailers that have been affixed to land constitutes impermissible double taxation. While in our view the ad valorem taxes which may be imposed upon such trailers are personalty taxes rather than real property taxes, imposition of ad valorem taxes on such property does not constitute double taxation.

The situation that concerns you is, as we understand it, the following. Winter residents of the Rio Grande Valley, as well as "many members of the business community" live in travel trailers for which they have had to pay "a sales tax and a motor vehicle registration." Letter from Honorable Jim Solis, Chair, Committee on Economic Development, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Mar. 4, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. These mobile homes are frequently grounded and equipped with such accoutrements as "rails, porches, or carports." *Id.* The Cameron Appraisal District taxes trailers that have been affixed to the land as real property pursuant to section 1.04(3)(A) of the Tax Code.

Apparently some owners of such trailers regard the assessment of such taxes as impermissible. To respond to these concerns, you have, on behalf of the appraisal district, requested the views of this office.

We note as a preliminary matter that the determination of whether any particular trailer has become an improvement to real property for the purposes of section 1.04 of the Tax Code depends upon factual questions which this office cannot answer in the opinion process. This determination, in the first instance, is to be made by the appraisal district, which "is responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district." TEX. TAX CODE ANN. § 6.01(b) (Vernon 1992).

Two subsections of section 1.04(3)'s definition of "improvement" are potentially relevant in this context:

> (3) "Improvement" means:
>
>> (A)  a building, structure, fixture, or fence erected on or affixed to land; [or]
>>
>> (B)  a transportable structure that is designed to be occupied for residential or business purposes, whether or not it is affixed to land, *if the owner of the structure owns the land on which it is located* . . . .

*Id.* § 1.04(3) (Vernon Supp. 1999) (emphasis added).

However, as we understand it, you are concerned primarily with trailers that are installed in trailer parks or courts, rather than on land owned by the trailer owner, and accordingly it is subsection (A) that is generally relevant here.

Pursuant to section 11.01 of the Tax Code:

> (a) All real and tangible personal property that this state has jurisdiction to tax is taxable unless exempt by law.
>
> (b) This state has jurisdiction to tax real property if located in this state.

*Id.* § 11.01(a), (b) (Vernon 1992). Real property means, inter alia, an improvement, *see id.* § 1.04(2)(B); and improvement includes structures affixed to land, as we have seen. A letter enclosed in the material submitted by the Cameron Appraisal District in connection with this request, and drafted by the Property Tax Division of the Office of the Comptroller of Public Accounts, explains that office's view of the consequences of these provisions with respect to trailers: "A travel trailer is exempt from taxation unless it is changed to be permanently affixed to the land rather than movable. If the trailer becomes affixed to the land, it is considered taxable real estate." Letter from Mr. Dennis Hart, Operations and Information Services, Property Tax Division, Office of the Comptroller, to Mr. Hubert Emerick (Nov. 16, 1998) (on file with Opinion Committee).

The Comptroller of Public Accounts is charged with a variety of duties with respect to the administration of the Property Tax Code, including the adoption of rules "establishing minimum standards for the administration and operation of an appraisal district." TEX. TAX CODE ANN. § 5.03(a) (Vernon 1992); *see generally id.* ch. 5 (Vernon 1992 & Supp. 1999). A construction of a statute by the administrative agency charged with its enforcement is entitled to great weight, so long as *it is reasonable and does not violate the statute's plain language. See Texas Ass'n of Long Distance Tel. Cos. v. Public Util. Comm'n,* 798 S.W.2d 875, 884 (Tex. App.–Austin, 1990, writ denied); *see also Texas Utils. Elec. Co. v. Sharp,* 962 S.W.2d 723, 726 (Tex. App.–Austin 1998, pet.

denied). In this instance, however, the view of the Comptroller's office, while a correct construction with respect to taxation of trailers as real property, does not address all issues between trailer owners and the appraisal district.

Determining whether a particular piece of personal property has become an improvement requires, as we have said, the resolution of factual questions. The issue to be considered is generally the intent of the owner as evidenced by "the mode and sufficiency of annexation . . . [and] the adaptation of the personalty to the use or purpose of the realty." *Reames v. Hawthorne-Seving, Inc.*, 949 S.W.2d 758, 761-62 (Tex. App.–Dallas 1997, pet. denied). The question of the owner's intent to make the attachment permanent cannot be determined by this office as a matter of law. Such determinations are, as we have said, committed to the appraisal district, subject to the property owner's right of protest to the appraisal review board under section 41.41 of the Tax Code.

However, as a matter of Texas law, it would appear that in the situation you describe, namely the long-term placement of travel trailers on lots of land owned by another person, there are separate taxable interests, but not two separate interests in real property.

While we have been presented with no particular lease agreements between trailer park operators and trailer owners, we think it safe to presume that trailer owners do not intend that, by hooking up their trailers, they will cede ownership of them to the trailer park operators. (In the rare instance where such was the case, the improvement would be taxable as real property to the trailer park operator.) In instances in which improvements have been made to real property by a second party who has a lease or easement arrangement with the owner of the property itself, by which the lessee or possessor has a right to remove the improvement, it has been said that such improvements "are severable for the purpose of taxation and are classified as personalty." Tex. Att'y Gen. Op. No. WW-691 (1959) at 3. Thus, in *Lingleville Indep. Sch. Dist. v. Valero Transmission Co.*, 763 S.W.2d 616, 618 (Tex. App.–Eastland 1989, writ denied), it was held that a 36-inch diameter gas pipeline buried below normal plow depth had not become realty because the pipeline's owner, in its agreement with the right-of-way grantors under whose land the pipeline ran, specifically reserved the right to remove the pipeline. Following the reasoning of the *Valero* case and Attorney General Opinion WW-691, then, we conclude that a trailer attached to a leased lot, while an improvement to real property, generally will remain the property of the person leasing the lot from the trailer park. Accordingly, such a trailer is taxable to the lessee of the lot, but as personalty rather than realty.

We note that it appears that the view of the law taken by the Property Tax Division and the Cameron Appraisal District, namely that the attachment of a trailer in this situation created two separate taxable interests in real property, was at one point correct. Pursuant to chapter 560, General and Special Laws of Texas, 61st Legislature, Regular Session (1969), article 7146 of the Revised Civil Statutes was amended to read:

> Real property for the purpose of taxation, shall be construed to include . . . forms of housing adaptable to motivation by a power connected thereto commonly called 'trailers' or 'mobile homes,' which are or can be used for residential, business, commercial, or

> office purposes . . . . If the owner of the trailer or mobile home is not the owner of the land, the trailer or mobile home shall be rendered for taxation separately from the land and taxes assessed shall be a liability of the owner of the trailer or mobile home, and not a liability of the landowner.

Act of May 27, 1969, 61st Leg., R.S., ch. 560, § 1, 1969 Tex. Gen. Laws 1710. However, in 1979, as part of the general codification of revenue statutes into the Tax Code, article 7146 was repealed, and this particular provision is not to be found in the later enactments. *See* Act of May 26, 1979, 66th Leg., R.S., ch. 841, §§ 1-9, 1979 Tex. Gen. Laws 2217.

Indeed, where the law speaks thereafter of trailers and mobile homes, it speaks of them as personalty. Thus, chapter 302, article 4, section 1 of the General and Special Laws adopted by the 66th legislature, in exempting household goods and personal effects from ad valorem taxation, defines such items as personalty, but excepts from this definition of personal effects "a mobile home or similar vehicle designed for occupancy as a dwelling." *See* Act of May 28, 1979, 66th Leg., R.S., ch. 302, art. 4, § 1, 1979 Tex. Gen. Laws 680, 687 (amending article 7150.2 of the Revised Civil Statutes) (current version at TEX. TAX CODE ANN. § 11.14 (Vernon 1992)).

This exception is the predecessor to the current section 11.14, which entitles a person to "an exemption from taxation of all tangible personal property, *other than manufactured homes*, that the person owns and that is not held or used for production of income." TEX. TAX CODE ANN. § 11.14(a) (Vernon 1992) (emphasis added). The constitutional warrant for this provision is the amendment to article VIII, section 1 of the Texas Constitution approved by the voters on November 3, 1987, which permitted the legislature to exempt from ad valorem taxation "all . . . tangible personal property, *except structures which are personal property and are used or occupied as residential dwellings* and except property held or used for the production of income." TEX. CONST. art. VIII, § 1(d)(2) (emphasis added).

In our view, then, the trailers at issue here are personal property. Such trailers as constitute "manufactured housing" are subject to ad valorem taxation and not exempted therefrom by section 11.14 of the Tax Code. (We note again, however, that the question of whether any particular trailer is a unit of manufactured housing for the purposes of that section, *see* TEX. TAX CODE ANN. § 11.14(b) (Vernon 1992), requires factual determinations which we cannot make in the opinion process.)

You question, however, whether it is permissible for such a trailer to be taxed when it has already, before being affixed, been subject to sales tax. You ask whether the owners of such trailers are "being wrongly taxed twice." *See* Request Letter.

No provision of the Texas Constitution expressly condemns double taxation. Article VIII, section 1(a) of the Texas Constitution, requiring that "[t]axation shall be equal and uniform," is the constitutional principle invoked in cases concerning double taxation. *See* TEX. CONST. art. VIII, § 1(a). Under this provision, property taxes must be nondiscriminatory and uniform in their

incidence. *See Smith v. Davis*, 426 S.W.2d 827, 833 (Tex. 1968). This requirement is satisfied, and "assessments are equal and uniform within the meaning of the constitution" if such assessments are equal and uniform with relation to other property in the county. *Id.* at 834. So far as appears from your letter and the materials we have received concerning your request, no claim has been made that the Cameron Appraisal District is selectively assessing property taxes against some trailer owners and not others; rather the complaint appears to be that all affixed trailers are being taxed. Such a practice, as *Smith v. Davis* makes clear, does not violate article VIII, section 1(a).

Nor would the practice violate article VIII, section 1(a) if it could be shown to impose a disproportionately higher burden on trailer owners than on other taxpayers, so long as the legislation on which the practice was based was rationally related to a legitimate governmental goal and the practice operated equally within each class. *See Tandy Corp. v. Sharp,* 872 S.W.2d 814, 818 (Tex. App.–Austin 1994, writ denied). The collection of ad valorem taxes on what have become, essentially, units of housing would appear to be a legitimate governmental goal, particularly given that both article VIII, section 1 of the Constitution and section 11.14 of the Tax Code specifically authorize it.

Further, the collection of such ad valorem taxes on such properties is not double taxation. Double taxation, according to Black's Law Dictionary, "does not include the imposition of different taxes concurrently on the same property." BLACK'S LAW DICTIONARY, 441 (5th ed. 1979). Thus, a person or business entity engaged in two or more businesses for which occupation taxes are levied may be taxed on the same gross receipts for each if the "receipts are not apportioned between the occupations or separated in some way . . . without constituting double taxation." *Bullock v. Pioneer Corp.*, 774 S.W.2d 302, 305 (Tex. App.–Austin 1989, writ denied). Similarly, both transmission and distribution of gas through a pipeline may be taxed at the same time because those activities, though "for all practical purposes simultaneous, . . . are essentially separable and distinct operations." *Id.* at 305. A sales tax is not the same as an ad valorem tax. Accordingly, no question of impermissible double taxation arises in the situation you describe.

## S U M M A R Y

Assessment of property taxes on travel trailers that constitute improvements to real property and are taxable as personalty is not, per se, impermissible double taxation.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee