**Robert Charles GRAVES, Appellant,**

v.

**Honorable Dan MORALES, State Attorney General; Honorable John Sharp, Comptroller of Public Accounts; and Martha Whitehead, State Treasurer, Appellees.**

No. 03–95–00415–CV.

Court of Appeals of Texas, Austin.

May 1, 1996.

Rehearing Overruled July 3, 1996.

Robert Charles Graves, Robert Charles Graves, P.C., League City, for Appellant.

Dan Morales, Attorney General, David S. Morales, Assistant Attorney General, General Litigation Division, Austin, for Appellees.

Before POWERS, ABOUSSIE and KIDD, JJ.

PER CURIAM.

Appellant Robert Charles Graves appeals from a trial court order granting appellees Dan Morales, John Sharp and Martha Whitehead's motion for summary judgment and denying his motion for summary judgment. Graves, an attorney in private practice, brought a declaratory judgment suit challenging the Comptroller's administration of the Attorney Occupation Tax.[1] *See* Tex.Tax Code Ann. §§ 191.141–.145 (West Supp. 1996). He sought a declaration that the tax is unconstitutional, relief from the lien imposed on his property for his failure to pay it, and refund of any taxes, interest, and penalties paid. We will affirm the trial-court judgment.

## ANALYSIS

■ By points of error one and three, Graves challenges the trial court's grant of summary judgment in favor of the Comptroller. The standards for reviewing a motion for summary judgment are well established: (1) The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The legislature imposed the challenged tax on each attorney licensed to practice law in the state. Tex.Tax Code Ann. §§ 191.141, .142 (West Supp.1996). The only attorneys exempted by statute are those who are at least seventy years old or who have assumed inactive status. Tex.Tax Code Ann. § 191.144 (West Supp.1996).

At issue is the Comptroller's practice of not physically collecting the tax from attorneys who are directly or indirectly employed by the state. By informal rule, the Comptroller keeps track of each such employee; and, having determined that the state may legitimately pay the occupation tax for its employees, he considers the tax that would be collected from the state employers and then remitted to the general revenue fund and the foundation school fund a "wash."

Graves claims that the Comptroller has effectively "exempted" state-employed attorneys from the tax. He argues that exempting one group of attorneys from the tax results in an inequitable assessment and collection that violates federal and state equal protection clauses, and Article 8, section 2 of the Texas Constitution. *See* Tex. Const. Art. 8, sec. 2; *Hoefling & Son v. City of San Antonio*, 85 Tex. 228, 234, 20 S.W. 85, 88 (1892). Article 8, section 2 provides that "[a]ll occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax."

■ We agree that systematic inequities in collecting an occupation tax would violate the stricture of article 8, section 2. *See Hoefling*, 20 S.W. at 88; *Bullock v. Pioneer Corp.*, 774 S.W.2d 302, 305 (Tex.App.—Aus-

---

1. The Attorney Occupation Tax was administered by the Comptroller until 1995. In 1995, responsibility for collecting the tax was transferred to the Texas Supreme Court. Act of May 10, 1995, 74th Leg., R.S., ch. 66, § 1, 1995 Tex.Gen.Laws 444, 445 (effective June 1, 1995) (codified at Tex.Tax Code Ann. § 191.1431 (West Supp. 1996)). However, the former law was continued in effect for the collection and enforcement of taxes due as of the effective date of the act. *Id.*, § 3.

tin 1989, writ denied); *but see Ana–Log, Inc. v. City of Tyler,* 520 S.W.2d 819, 824 (Tex. Civ.App.—Tyler 1975, writ ref'd n.r.e.) (prohibition does not apply to collection of taxes); *Edinburg Improvement Ass'n v. City of Edinburg,* 191 S.W.2d 752, 754 (Tex.Civ.App.—San Antonio 1945, no writ) (settling delinquent taxes for less than assessed amount does not violate constitution). However, we conclude that the Comptroller's decision to offset monies that would be collected by monies that would be dispersed does not create an unconstitutional "exemption," and is rationally related to its purpose to efficiently collect and remit taxes.

*The State's Authority to Pay Taxes for Its Employees*

■ The Comptroller, in formulating his rule, relied on several Attorney General opinions concluding that state agencies could legitimately pay occupation taxes for their employees. *See* Op. Att'y Gen. No. JM–1063 (1989); Op. Att'y Gen. No. LO–88–79. We agree with the Attorney General. Article III, sections 51 and 52 of the state constitution prohibits the expenditure of public funds for private gain. Tex. Const. art. III, sec. 51, 52. The purpose of the constitutional provisions barring transfers to private individuals is to prevent the gratuitous application of public funds to any individual. *Edgewood Indep. Sch. Dist. v. Meno,* 893 S.W.2d 450, 473 (Tex.1995). But the Constitution does not invalidate an expenditure which incidentally benefits a private interest if it is made for the direct accomplishment of a legitimate public purpose. *Brazoria County v. Perry,* 537 S.W.2d 89, 90 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ). "A transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or grant of public funds in violation of article III, sections 51 and 52." *Edgewood,* 893 S.W.2d at 473–74.

Here, public funds are transferred to public employees to recompense them for a tax they must pay as a consequence of practicing their profession. The state benefits from the continued employment of professionals in its service. It is no more a transfer of public funds for private purposes than is the employee's paycheck. *See Brazoria County,* 537 S.W.2d at 90 (funds paid to person while attending law enforcement course was expenditure for direct accomplishment of legitimate public purpose).

*The Comptroller's Ability to Offset Taxes Due and Taxes Paid*

■ Next we examine the Comptroller's decision that the taxes that would be paid by state employers should simply be offset by the taxes to be remitted to the state treasury. The Comptroller is authorized to formulate rules to implement tax collection. *See* Tex.Tax Code Ann. § 111.002 (West 1992). The rules need not be published to be valid. *See Southwest Airlines Co. v. Bullock,* 784 S.W.2d 563, 567 (Tex.App.—Austin 1990, no writ). The Comptroller's rule is his attempt to deal administratively with the imposition of the new tax, the state employer's ability to pay it for their employees, and the most efficient way to collect and remit it.

■ Courts must uphold legislative administrative rules if they are reasonable. *Bullock v. Hewlett–Packard Co.,* 628 S.W.2d 754, 756 (Tex.1982); *Chrysler Motors Corp. v. Texas Motor Vehicle Comm'n,* 846 S.W.2d 139, 142 (Tex.App.—Austin 1993, no writ). The rules need not be wise, desirable, or even necessary. *Hewlett–Packard Co.,* 628 S.W.2d at 756. The rules need only be based on some legitimate position by the administrative agency involved. *Id.* Administrative convenience is a proper justification for a rule. *Id.; Chrysler Motors Corp.,* 846 S.W.2d at 143.

■ The Comptroller's position is that keeping track of the attorneys employed by state employers, and netting the tax owed by the state with the tax due to the state, is an efficient method of collecting the tax. We conclude that that is a legitimate position to take and one that is consistent with his authority. We overrule points of error one and three.

*Relief Requested*

■ By point of error two, Graves challenges the trial court's denial of his motion for summary judgment. Even if we had

found that the Comptroller's interpretation violated the constitutional requirement of uniformity, Graves did not prove his entitlement to summary judgment because he offered no proof that he was entitled to be relieved of his tax burden.

The Texas Supreme Court has held that the government does not lose its right to tax one group simply because its officers failed to assess other groups that were similarly taxable. *See State v. Federal Land Bank of Houston,* 160 Tex. 282, 329 S.W.2d 847, 850 (1959). *Federal Land Bank* is not squarely on point because it involved unequal *assessments* under the Article 8, section 1 prohibition against unequal property taxes. But we hold that the rationale also applies to unequal *collection practices* under the Article 8, section 2 prohibition against unequal occupation taxes.

■■■ To obtain personal relief, the taxpayer must show not only that the plan was arbitrary and illegal but also that it caused him substantial injury. *See id.* To prove that he has been substantially injured, the taxpayer must prove that his taxes are excessive or substantially higher by virtue of the omission of the tax on the other group. *Id.*; *see also City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414, 417 (1954) (must show substantial injury to be entitled to relief even to the extent of the excess tax); *American Bank & Trust Co. v. Dallas County,* 679 S.W.2d 566, 569 (Tex.App.—Dallas 1984, no writ) (taxpayers not entitled to injunctive relief without proof that lower tax would be due). Graves did not present any evidence to show that his tax was higher than it would have been if the Comptroller had not decided to offset the taxes due and payable of state-employed attorneys.

Graves relies on *Pullman Palace–Car Co. v. State,* 64 Tex. 274 (1885), to support his plea to void the tax as to him. *Pullman* is distinguishable because the statute evaluated in that case was discriminatory on its face: it

specifically exempted one group of potential taxpayers. The *Pullman* court reasoned that because it did not have the power to assess the excluded group, it would exercise the only power it had, which was to prevent collection of an unconstitutionally inequitable tax.

Here, of course, the statute is regular on its face; the only issue is the Comptroller's collection practice. Graves is not entitled to the personal relief he seeks in the absence of proof that the tax he paid was excessive.[2] We overrule point of error two.

## CONCLUSION

We conclude that the trial court did not err in granting appellees' motion for summary judgment or in denying appellant's. We affirm the trial-court judgment.

---

**2.** Had we found the Comptroller's practice unconstitutional, it appears that proper relief would have been a mandamus ordering him to physically collect the tax from attorneys employed by the state. *Cf. Hoefling,* 20 S.W. at 88 (parties stipulated that proper relief would be mandamus). However, only the Texas Supreme Court can

issue a writ to an officer of the state government. Tex.Gov't Code Ann. § 22.002(c) (West 1988); *Hargett v. McDaniel,* 717 S.W.2d 688, 689–90 (Tex.App.—Texarkana 1986, no writ); *American Nat. Bank v. Sheppard,* 175 S.W.2d 626, 627–28 (Tex.Civ.App.—Austin 1943, writ ref'd w.o.m.).