OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



November 16, 1999

The Honorable Bob Hunter
Chair, Committee on State, Federal and
  International Relations
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0146

Re:  Whether the legislature is authorized to appropriate money to a state agency to transfer to a private, out-of-state endowment, and whether a state university may transfer appropriated funds to a private, out-of-state endowment (RQ-0082-JC)

Dear Representative Hunter:

Your questions arise from the legislative appropriation of funds to Southwest Texas State University ("SWTSU" or the "University") with the understanding that the funds would be transferred to a National Geographic Society endowment fund. You ask whether the legislature is authorized to appropriate money to a private, out-of-state endowment and, if so, whether the University may transfer appropriated funds to a private, out-of-state endowment. We conclude that the legislature may not appropriate state funds to a state agency to transfer to a private, out-of-state endowment unless the appropriation satisfies article III, sections 35, 44 and 51 and article VIII, section 6 of the Texas Constitution. A state university is not authorized to transfer appropriated funds to a private, out-of-state endowment unless the state university is authorized to do so by statute and the transfer comports with article III, section 51. No statute authorizes SWTSU to transfer appropriated funds to the National Geographic Society or to enter into a contract regarding such a transaction.

The National Geographic Society has offered to establish an endowment fund for funding geography education in Texas, which would be called the Texas Fund for Geography Education, on the condition that the state deposit $500,000 in the Society's state endowment account in Washington, D.C. *See* Letter from Honorable Bob Hunter, Chair, Committee on State, Federal and International Relations, Texas House of Representatives, to Elizabeth Robinson, Office of the Texas Attorney General, at 1 (July 6, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. The Society would match the state's contribution to bring the state's endowment to $1 million. *See id.* It appears that the primary purpose of the endowment would be to fund improvements in elementary and secondary school geography education in the state. *See id.* (attachments from National Geographic Society) ("Income from a state fund will benefit a broad array of programs, including professional development institutes for teachers and administrators, curriculum materials, exhibitions, and resource collections.").

In 1995, the Seventy-fourth Legislature appropriated $376,242 to SWTSU for each of the fiscal years ending August 31, 1996 and 1997 for geography education. *See* 1995 General Appropriations Act, 74th Leg., R.S., ch. 1063, 1995 Tex. Gen. Laws 5242, 5598. The 1995 General Appropriations Act stated that this appropriation was for "Improvement of Geography Education." *Id.* You explain that the legislature intended for at least some of this appropriation to be transferred to the National Geographic Society's state endowment program to fund an endowment for the State of Texas. *See* Request Letter at 1. You state that the "legislature appropriated $200,000 for the 1996-97 biennium, with the understanding that when the Texas fund reached $500,000 the Society would provide matching dollars. Rather than making the appropriation directly to the Society, the funds were sent to SWTSU along with another large sum of money for various other geography programs." *Id.* However, because SWTSU believes that it is not authorized to transfer the funds to an out-of-state endowment account, the money intended for the Society remains at the University. *See id.*

You ask the following questions:

> 1) Whether a transaction of state funds to a reputable out-of-state endowment that will ultimately benefit the state is both an allowable and appropriate action of the legislature.
>
> 2) If so, would it be appropriate for SWTSU to transfer the funds allocated in 1995 to the National Geographic Society's Texas Fund for Geography Education.

*Id.* at 2.

Based on the factual scenario you have described, we assume your first question goes to the authority of the legislature to appropriate state funds to a state agency to transfer to a private endowment rather than the authority of the legislature to appropriate money directly to a private endowment. We also note that your questions involve a 1995 appropriation. Because appropriations are generally limited to two years in duration, *see* TEX. CONST. art. VIII, § 6, the appropriation you describe has lapsed. Thus, we address the authority of the legislature to appropriate funds in general terms and do not address the validity of any particular appropriation.

Article III of the Texas Constitution establishes the legislative branch and establishes certain limitations on its powers. A number of constitutional provisions limit the legislature's authority to appropriate state funds to private individuals and corporations, either directly or by statutes authorizing expenditures by state or local entities. Section 51, for example, provides that the "Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever." TEX. CONST. art. III, § 51. Section 52 prohibits the legislature from authorizing any political

corporation or subdivision of the state "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." *Id.* § 52. The purpose of article III, sections 51 and 52 is the same — to prevent the gratuitous application of public funds to private individuals. *See Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Tex. 1928); *Graves v. Morales*, 923 S.W.2d 754, 757 (Tex. App.–Austin 1996, writ denied). But the constitution does not bar a governmental expenditure that benefits a private interest if it is made for the direct accomplishment of a legitimate public purpose. *See Byrd*, 6 S.W.2d at 740. "A transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or a grant of public funds in violation of article III, sections 51 and 52." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). For this reason, attorneys general have long opined that sections 51 and 52 do not preclude the state or a political subdivision from making an expenditure of public money that benefits a private person or entity if the appropriate governing body (i) determines that the expenditure serves a public purpose and (ii) places sufficient controls on the transaction to ensure that the public purpose is carried out. *See, e.g.*, Tex. Att'y Gen. Op. Nos. DM-256 (1993) at 2-3; JM-1146 (1990) at 4-5; JM-551 (1986) at 3-4; H-966 (1977) at 2.

A related limitation, article III, section 44, prohibits the legislature from making grants of money out of the State Treasury, by appropriation or otherwise, "to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law." TEX. CONST. art. III, § 44. This office has construed this provision to preclude the legislature from appropriating funds unless the appropriation is authorized by pre-existing general law. *See, e.g.*, Tex. Att'y Gen. Op. Nos. H-1213 (1978) at 1; M-1068 (1972) at 5 ("It is settled as the law of this state that under the provisions of Section 44 of Article III of the Constitution of Texas, the legislature is prohibited from appropriating state money unless *at the very time* the appropriation is made, there is already in force some pre-existing valid law authorizing the appropriation.") (emphasis in original) (citing *Fort Worth Cavalry Club v. Sheppard*, 83 S.W.2d 660, 668 (Tex. 1935)); *see also Bullock v. Calvert*, 480 S.W.2d 367, 371-72 (Tex. 1972) (holding that even if legislature had appropriated funds to officer for a particular purpose, officer must also have statutory authority to enter into contract for that purpose) (citing *Fort Worth Cavalry Club v. Sheppard*, 83 S.W.2d 660).

In addition, some constitutional provisions dictate the form of legislative appropriations. For example, article III, section 35 limits the legislature to including in an appropriations act "various subjects and accounts, for and on account of which moneys are appropriated." TEX. CONST. art. III, § 35. Article III, section 35 has been construed by the courts to preclude the legislature from enacting substantive law in an appropriations act. *See Strake v. Court of Appeals*, 704 S.W.2d 746, 748 (Tex. 1986) ("This Unity-in-Subject Clause has been construed to mean that appropriations is a single subject and that any rider to an appropriations bill must relate to the appropriation of funds. Any rider dealing with a different subject is general legislation and prohibited by the Unity-in-Subject Clause. A rider which attempts to alter existing substantive law is a general law which may not be included in an appropriations act.") (citing *Jessen Assocs. v. Bullock*, 531 S.W.2d 593, 600-01 (Tex. 1975); *Moore v. Sheppard*, 192 S.W.2d 559, 561-62 (Tex. 1946)). In addition, article VIII, section 6 provides that no money shall be drawn from the State Treasury "but in

pursuance of specific appropriations made by law." TEX. CONST. art. VIII, § 6. Thus, an appropriation must specify its purpose. *See National Biscuit Co. v. State*, 135 S.W.2d 687, 693 (Tex. 1940) ("[N]o particular form of words is required to render an appropriation specific within the meaning of the constitutional provision under discussion. It is sufficient if the Legislature authorizes the expenditure by law, and specifies the purpose for which the appropriation is made.").

A legislative appropriation of state funds to a state agency to transfer to a private endowment must comport with the foregoing limitations. Such an appropriation will violate article III, section 51 of the Texas Constitution unless the legislature (i) determines that the expenditure serves a public purpose and (ii) authorizes the state agency to place sufficient contractual controls on the transaction to ensure that the public purpose is carried out. The authority of the state agency to transfer the funds and enter into a contract providing the requisite controls must be supported by substantive law. *See* TEX. CONST. art. III, §§ 35, 44. Furthermore, the appropriation must be sufficiently specific. *See id.* art. VIII, § 6.

The authority of SWTSU to transfer funds to the National Geographic Society depends upon similar concerns. The authority of the legislature to authorize a state university to transfer state funds is limited by article III, sections 51 and 52, and any transfer of funds from a state university to a private entity must satisfy those limitations. However, these constitutional provisions do not affirmatively authorize expenditures. State universities are creatures of statute and their authority to expend funds must be expressly provided or necessarily implied by statute. *See* Tex. Atty. Gen. Op. Nos. JM-551 (1986) at 5; MW-475 (1982) at 1-2 ("The governing bodies of state universities are creatures of statute and may constitutionally exercise only powers properly delegated to them by the legislature.") (citing *Foley v. Benedict*, 55 S.W.2d 805 (Tex. 1932)). This office has been *particularly concerned that the authority of a state university to grant funds to other public and private entities be provided by statute.* *See* Tex. Att'y Gen. Op. No. MW-532 (1982) at 1 (concluding that agency of Texas A&M University System lacked authority to grant state funds to private landowners). No statute authorizes SWTSU to transfer funds to the National Geographic Society for the Texas Fund for Geography Education.

SWTSU is an institution of higher education under the management and control of the Board of Regents of the Texas State University System, *see* TEX. EDUC. CODE ANN. § 96.41 (Vernon 1991), and the Board of Regents is specifically vested with the authority to disburse appropriations made by the legislature for the support and maintenance of the system universities. *See id.* § 95.28. Chapter 95 of the Education Code generally vests the Texas State University System Board of Regents with the organization, control, and management of the state university system. *See id.* § 95.01. That chapter gives the board broad authority to control and manage the universities in the system, to construct, equip and repair buildings, to make purchases, to employ personnel, to perform acts that "contribute to the development of the universities in the system or the welfare of their students," and to adopt rules for the operation, control, and management of the university system and its institutions. *Id.* § 95.21; *see also id.* §§ 95.30 (power of eminent domain); 95.31 (power to

acquire land); 95.33 (authority to manage property); 95.36 (authority to manage and lease land); 95.34 (authority to accept donations, gifts, grants and endowments).

Although its authority is broad, the Board of Regent's authority is generally limited to the system and its component universities. No provision in chapter 95 expressly authorizes the Board of Regents to expend funds for statewide elementary and secondary geography education generally or, more specifically, to transfer funds to or to contract with the National Geographic Society for that purpose. Nor may this authority be implied from any express provision. *See* Tex. Att'y Gen. Op. No. H-1312 (1978) at 1 (concluding that Texas State University System Board of Regents authority to purchase food and beverages could be implied from express authority to purchase necessary supplies under section 95.21 of the Education Code).

The 1995 appropriation of funds to SWTSU for geography education merely stated that this appropriation was for "Improvement of Geography Education." *See* 1995 General Appropriations Act, 74th Leg., R.S., ch. 1063, 1995 Tex. Gen. Laws 5242, 5598. On its face, this item of appropriation could have been for improvement of geography education at the university as easily as it could have been for the improvement of statewide elementary and secondary geography education. Furthermore, this item of appropriation made no mention of the National Geography Society. Nor did the 1995 General Appropriations Act contain a rider detailing the use of this item of appropriation. Moreover, as we have explained, the authority of a state agency, such as a state university, to transfer state funds to a private endowment and enter into a related contract must be supported by substantive law and cannot be based solely on an inspecific appropriation or rider. *See* TEX. CONST. art. III, §§ 35, 44; *id.* art. VIII, § 6.

In sum, we conclude that the legislature may not appropriate funds to a state agency to transfer to a private endowment unless the legislature (i) determines that the expenditure serves a public purpose and (ii) requires the agency to place sufficient contractual controls on the transaction to ensure that the public purpose is carried out. The authority of the state agency to transfer the funds and enter into a contract providing the requisite controls must be supported by substantive law. SWTSU lacks statutory authority to transfer appropriated state funds to the National Geographic Society for the Texas Fund for Geography Education or to enter into a contract with the National Geographic Society regarding such a transaction.

## SUMMARY

The legislature may not appropriate funds to a state agency to transfer to a private endowment unless the legislature (i) determines that the expenditure serves a public purpose and (ii) requires the agency to place sufficient contractual controls on the transaction to ensure that the public purpose is carried out. *See* TEX. CONST. art. III, §§ 51, 52. The authority of the state agency to transfer the funds and enter into a contract providing the requisite controls must be supported by substantive law. *See id.* §§ 35, 44. Southwest Texas State University lacks statutory authority to transfer appropriated state funds to the National Geographic Society for a Texas Fund for Geography Education to benefit elementary and secondary geography education in the state or to enter into a contract with the National Geographic Society regarding such a transaction.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee