OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



September 22, 1999

The Honorable Barry B. Telford
Chair, Committee on Calendars
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0113

Re: Whether article III, section 52 of the Texas Constitution precludes a school district from participating in "Texas Safe Sports Week" (RQ-0056)

Dear Representative Telford:

You ask whether article III, section 52 of the Texas Constitution precludes a school district from participating in "Texas Safe Sports Week," a program sponsored by a private foundation. We conclude that article III, section 52 does not preclude a school district from expending school district funds or other resources on "Texas Safe Sports Week" activities if the school district board of trustees (i) determines that any expenditure in connection with the program serves a necessary school district purpose and (ii) places sufficient controls on such expenditures to ensure that the school district purpose is carried out.

With your request, you attach a letter from the Kent Waldrep National Paralysis Foundation (the "Foundation") explaining that the purpose of "Texas Safe Sports Week" is to "provide educational materials to school administrations [and] athletic staffs;" "to create a public awareness that there is a risk involved in all life activities" and of "the benefits of athletics in the educational setting;" and "to raise funds for research into the prevention and rehabilitation of athletic injury." Letter from Kent Waldrep, President and CEO, Kent Waldrep National Paralysis Foundation, to Honorable John Cornyn, Attorney General (Apr. 1, 1999) (on file with Opinion Committee). Your request letter indicates that the Foundation is particularly concerned about Attorney General Opinion JM-431, a 1986 opinion of this office that concludes that article III, section 52 precludes a county commissioner from using county funds or personnel to collect funds for the American Red Cross for earthquake victims. See Tex. Att'y Gen. Op. No. JM-431 (1986) at 2-3. It also concludes, however, that incidental use of space in the county courthouse for aid collection efforts does not violate article III, section 52. See id. at 4. Based on the description of "Texas Safe Sports Week" and your reference to Attorney General Opinion JM-431, we gather that your primary concern is whether school districts may use school district funds and other resources, including personnel and property, to raise funds for the Foundation in light of article III, section 52.

Article III, section 52(a) prohibits the legislature from authorizing any political subdivision of the state "to lend its credit or to grant public money or thing of value in aid of, or to any

individual, association or corporation whatsoever." TEX. CONST. art. III, § 52(a). A similar provision in article III, section 51 states that "[t]he Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever." *Id.* § 51. The purpose of article III, sections 51 and 52 is the same — to prevent the gratuitous application of public funds to private individuals or entities. *See Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Tex. 1928); *Graves v. Morales*, 923 S.W.2d 754, 757 (Tex. App.–Austin 1996, writ denied). But the constitution does not bar a governmental expenditure that benefits a private interest if it is made for the direct accomplishment of a legitimate public purpose. *See Byrd*, 6 S.W.2d at 740. "A transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or grant of public funds in violation of article III, sections 51 and 52." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995).

Attorneys General have long opined that sections 51 and 52 do not preclude the state or a political subdivision from making an expenditure of public money that benefits a private person or entity if the appropriate governing body (i) determines in good faith that the expenditure serves a public purpose and (ii) places sufficient controls on the transaction to ensure that the public purpose is carried out. *See, e.g.*, Tex. Att'y Gen. Op. Nos. DM-394 (1996), DM-256 (1993) at 2-3, JM-1146 (1990), JM-551 (1986), H-966 (1977). In the case of independent school districts, the board of trustees must determine that an expenditure serves a valid school district purpose, and must impose sufficient controls, subject to judicial review. *See* Tex. Att'y Gen. Op. No. DM-256 (1993) at 2-3 (an independent school district board of trustees must determine in first instance that provision of assistance to nonprofit foundation serves a school district purpose under article III, section 52); Tex. Att'y Gen. LO-93-93, at 2-3 (an independent school district board of trustees must determine in first instance that the use of school district general funds to award college scholarships to high school graduates based on academic ranking serves a school district purpose under article III, section 52). In addition, a board of trustees is limited by statute to expending school district funds for "purposes necessary in the conduct of the public schools," TEX. EDUC. CODE ANN. § 45.105(c) (Vernon Supp. 1999) (local school funds may be used for "purposes necessary in the conduct of the public schools determined by the board of trustees"); Tex. Att'y Gen. Op. No. JM-1265 (1990) at 3 (opining that term "necessary" in predecessor to section 45.105(c) of the Education Code "appears to mean appropriate or conducive to the conduct of a public school rather than indispensable thereto"), and must use school property for school purposes, *see* Tex. Att'y Gen. Op. No. DM-256 (1993) at 3.

Accordingly, we conclude that article III, section 52 does not preclude a school district from expending school district funds and other resources on "Texas Safe Sports Week" activities if the school district board of trustees (i) determines that any expenditure in connection with the program serves a necessary school district purpose and (ii) places sufficient controls on such expenditures to ensure that the school district purpose is carried out. We caution, however, that judicial and attorney general opinions construe article III, section 52 to preclude political subdivisions from making unconditional gifts or donations to private entities — expenditures which, by definition, lack sufficient controls to ensure that an authorized public purpose is achieved. *See, e.g., Kordus v. City of Garland*, 561 S.W.2d 260 (Tex. Civ. App.–Tyler 1978, writ ref'd n.r.e.) (holding that taxpayer

had standing to bring action against city to enjoin it from making donations to private corporation in violation of article III, section 52) (citing Tex. Att'y Gen. Op. No. H-397 (1974)); Tex. Atty Gen. Op. Nos. JM-431 (1986) (county may not donate funds or personnel to raise funds for American Red Cross for earthquake victims); MW-329 (1981) (concluding that because a county not authorized to provide assistance to the disabled and therefore could not contract for such services, a contribution to a nonprofit organization organized to provide such assistance would violate article III, section 52); H-1189 (1978) (unconditional grant of funds by county to private day care would constitute a donation of public funds in violation of article III, section 52); H-397 (1974) (county may not pay dues to chamber of commerce); M-661 (1970) (county may not offer grant of public funds to private religious charitable institutions); Tex. Att'y Gen. LO-96-035, at 2 (because article III, section 52 prohibits "outright gifts and donations to private entities," county may not donate county tax funds to nonprofit industrial development organization).[1] This construction is of long-standing. *See, e.g.,* Tex. Att'y Gen. Op. Nos. O-7197 (1946) (county may not donate county funds to the building within that county of a privately-chartered cooperative hospital); O-5563 (1943) (county may not contribute to private charitable institutions, including homes for the elderly and homes for impoverished children); O-1001 (1939) (county may not contribute public funds to Tuberculosis Association, American National Red Cross or to any other private charitable organization). Thus, article III, section 52 prohibits school districts from donating school district funds or other resources to the Foundation. But a school district may expend school district funds or other resources in connection with the fund raising activities of the Foundation if the board of trustees (i) determines that the activities serve a necessary school district purpose, such as student education or instruction, and (ii) imposes sufficient controls to ensure that the school district purpose is achieved.

---

[1] *See also* Tex. Att'y Gen. LO-96-035, at 2 n.1 (noting that while some attorney general opinions have concluded that certain types of "donations" are permissible under article III, section 52, use of the term "donation" in connection with those expenditures is a misnomer given that the opinions require those expenditures to serve a public purpose and to include sufficient controls to ensure public purpose is achieved).

## S U M M A R Y

Article III, section 52 of the Texas Constitution does not preclude a school district from expending school district funds or other resources on "Texas Safe Sports Week" activities if the school district board of trustees (i) determines that any expenditure in connection with the program serves a necessary school district purpose and (ii) places sufficient controls on such expenditures to ensure that the school district purpose is carried out.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee