

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 23, 2006

The Honorable Robert G. Neal, Jr.
Sabine County Attorney
Post Office Box 1783
Hemphill, Texas 75948

Opinion No. GA-0472

Re: Sabine County Hospital District's authority
and duties (RQ-0466-GA)

Dear Mr. Neal:

You ask several questions about the Sabine County Hospital District's (the "District")
authority and duties.[1]

You first ask:

> Is the Sabine County Hospital District, which reportedly
> intends to maintain an ambulance for transporting patients only [to
> other hospitals], required to dispatch the ambulance on an emergency
> call? (if there is no other ambulance service within the county
> providing emergency ambulance services.)

Request Letter, *supra* note 1, at 2.

As background, a brief submitted in response to your question informs us that Sabine County
asked the District to provide ambulance service to the county's residents.[2] "The District undertook
the task and currently has two fully staffed ambulances and one other ambulance used for the
purpose of transferring emergency patients [from the District's hospital] to the nearest medical
center, which is approximately 45 minutes away from Sabine." Fuller Brief, *supra* note 2, at 2. The
District, however, has determined that it "cannot financially continue to maintain three ambulances
and operate within its fiscal budget." *Id.*

The District's enabling legislation requires the District—as authorized by Texas Constitution
article IX, section 9—to "establish[ ] a hospital or a hospital system within its boundaries to furnish

---

[1]*See* Letter from Honorable Robert G. Neal, Jr., Sabine County Attorney, to Honorable Greg Abbott, Attorney
General of Texas (Mar. 8, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us)
[hereinafter Request Letter].

[2]*See* Brief from Alex J. Fuller, Jr., Davis and Davis, to Nancy S. Fuller, Chair, Opinion Committee, Office of
the Attorney General of Texas, at 2 (May 12, 2006) (on file with the Opinion Committee) [hereinafter Fuller Brief].

hospital and medical care to the residents of the district."[3]  The enabling legislation also requires the District to "provide all necessary hospital and medical care for the needy inhabitants of the district."[4] Nevertheless, this office has long held that, despite a district's general duty to provide medical care, a district is not required to provide ambulance services. *See* Tex. Att'y Gen. Op. Nos. JC-0420 (2001) at 5, H-1279 (1978) at 1, M-385 (1969) at 3–4, C-759 (1966) at 3. A district's ambulance service is "an ancillary function which a hospital district *could undertake* if it were deemed necessary." Tex. Att'y Gen. Op. No. M-385 (1969) at 3 (citing Tex. Att'y Gen. Op. No. C-759 (1966)). As such, whether a district will provide ambulance services is a discretionary matter; and to the extent a district does provide those services, it is also for the district to determine the scope of those services. In answer to your first question, then, assuming the District has not entered into a contract to dispatch ambulances for a prescribed period, the District is not required by law to dispatch its ambulances for emergency calls, even if there are no other ambulances operating within the District.

You next ask the following questions:

> Can the Sabine County Hospital District contract with a physician to provide a complete utilization review and analysis of the emergency room to maximize hospital efficiency and improve healthcare and perform a study for a future hospital operating room and pay the physician a consulting fee of $85,000.00[?]  If so, does the hospital have to publicly bid this contract?  May the hospital district board of directors restrict its discussion of this contract to closed sessions?

> Can the Sabine County Hospital District located within a medically underserved area and a health professional shortage area, enter into a contract with a physician agreeing to pay the physician the sum of $6,250.00 per month for a period of up to ten months should the physician be unable to organize his practice under a rural health clinic designation[?]

Request Letter, *supra* note 1, at 2. Because they are related, we first address the two contract issues together. We will address separately your question about the District's authority to discuss these contracts in a closed meeting.

As background to your contract questions, a brief informs us that the District has difficulty attracting quality physicians to practice in its area. *See* Fuller Brief, *supra* note 2, at 3. We understand that as a consequence of the District's difficulties in finding health care professionals,

---

[3]Act of May 22, 1975, 64th Leg., R.S., ch. 565, §§ 1, 3, 1975 Tex. Gen. Laws 1829, 1829; *see also* TEX. CONST. art. IX, § 9.

[4]Act of May 22, 1975, 64th Leg., R.S., ch. 565, § 3, 1975 Tex. Gen. Laws 1829, 1829.

the District has offered a particular doctor a variety of financial incentives as a part of a consulting and service contract in order to induce the doctor to relocate to and practice medicine in the District. *See id.* at 3–4. Specifically, the District has proposed to pay the doctor $85,000 for relocation costs, as a recruiting fee, and as compensation to the doctor to perform a "complete utilization review and analysis of the emergency room." *Id.* at 2. In addition, the District has proposed to pay the doctor a sum of $6,250 per month for up to ten months to provide "emergency room services and services to patients in the Sabine County Hospital," should the physician be unable to organize his private practice in a manner that would qualify it for federal funding. *See id.* at 3. You question whether the District is authorized to compensate the doctor in this way and whether the contract has to be competitively bid. *See* Request Letter, *supra* note 1, at 2.

The District is authorized to contract for hospital services and pay for such services consistent with constitutional restrictions on the expenditure of public funds. The District's board of directors "has full power to. manage and control the district."[5] The District is specifically authorized to "employ . . . employees necessary for the efficient operation of the district" and to "employ an administrator to manage the operations of the hospital system, who may hire necessary personnel to perform the services provided by the system."[6] This duty to hire necessary personnel for a district's efficient operation has been recognized by this office to confer on a hospital district's board the implicit power "to do what is reasonable and necessary to perform such duty." Tex. Att'y Gen. Op. No. M-223 (1968) at 2; Tex. Att'y Gen. LO-98-024 (1998) at 1. This implicit power includes granting public funds or thing of value to a person as an incentive to the person to provide services to the district consistent with Texas Constitution article III, section 52. *See* Tex. Att'y Gen. LO-98-024 (1998) at 3 (determining that a hospital district could pay temporary housing expenses to visiting army medical personnel with whom the district had contracted to perform services for the district); *see also* Tex. Att'y Gen. Op. No. DM-317 (1995) at 3 (determining that a commissioners court was authorized to pay travel expenses to a forensic pathologist whom the county wished to interview). Texas Constitution article III, section 52 prohibits a political subdivision from "grant[ing] public money or thing of value in aid of, or to any individual, association, or corporation whatsoever." TEX. CONST. art. III, § 52(a). But an expenditure of public funds for the benefit of an individual to accomplish a public purpose does not violate this provision. Tex. Att'y Gen. Op. No. DM-317 (1995) at 3; *see also Graves v. Morales*, 923 S.W.2d 754, 757 (Tex. App.—Austin 1996, writ denied) (state agency can pay its employees' occupation taxes). To be constitutional, such incentives must be necessary for the direct accomplishment of a legitimate public purpose, a district must receive adequate consideration for its expenditure, and there must be appropriate controls in place to assure that the public purpose will be carried out. *Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383–84 (Tex. 2002). Whether the services a district may receive in exchange for the incentive it offers is adequate to satisfy constitutional concerns is for the district to decide in the first instance, subject to judicial review for abuse of discretion. Tex. Att'y Gen. LO-98-024 (1998) at 2–3; *see also Barrington v. Cokinos*, 338 S.W.2d 133, 142 (Tex. 1960) ("[A] court has no right to substitute its judgment and discretion for the judgment and discretion of the governing body upon whom the law visits the primary power and duty to act.").

---

[5]*Id.* § 12(a), at 1833.

[6]*Id.* § 12(e)(2), (3), at 1833.

It is clear that the District may pay for services. However, the sums at issue (a lump sum of $85,000, and a possible $6,250 per month for up to ten months) appear to include incentives to the doctor to relocate to the District. *See* Fuller Brief, *supra* note 2, at 2–3. To the extent that these sums are an incentive payment, the District is authorized to pay them provided they are necessary to obtain the required hospital services, the District receives adequate services for its expenditure, and the District imposes the appropriate controls to assure that it receives the required services. And the District's board of directors must determine in the first instance whether the services the District receives are adequate consideration in exchange for the amount paid.

Furthermore, where a district is contracting with a physician who is to provide professional services, the contract must also comply with Government Code chapter 2254, the Professional Services Procurement Act. *See* TEX. GOV'T CODE ANN. §§ 2254.001–.154 (Vernon 2000 & Supp. 2006). This act applies any time a governmental entity, like a hospital district, contracts for professional services. *See* Tex. Att'y Gen. Op. No JM-1189 (1990) at 4–5; *see also* TEX. GOV'T CODE ANN. § 2254.002(1)(B) (Vernon Supp. 2006) (defining "governmental entity" to include "district[s]" of the state); *id.* § 2254.002(2)(A)(v), (B)(v) (defining "professional services" to include medicine and services rendered by a physician). Under the act,

> (a) A governmental entity may not select a provider of professional services or a group or association of providers or award a contract for the services on the basis of competitive bids submitted for the contract or for the services, but shall make the selection and award:
>
>> (1) on the basis of demonstrated competence and qualifications to perform the services; and
>>
>> (2) for a fair and reasonable price.
>
> (b) The professional fees under the contract:
>
>> (1) must be consistent with and not higher than the recommended practices and fees published by the applicable professional associations; and
>>
>> (2) may not exceed any maximum provided by law.

*Id.* § 2254.003 (Vernon 2000).

Thus, to the extent the District's proposed sums represent compensation for professional services within the scope of the practice of medicine or provided in connection with the employment or practice of a physician, they must be fair and reasonable, must be consistent with and not higher than the recommended practices and fees published by the applicable professional associations, and may not exceed any maximum provided by law. Whether the amounts the District proposes to pay comply with those requirements requires the resolution of fact questions, which is not appropriate

in the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0430 (2006) at 3 n.4. Under the terms of the Professional Services Procurement Act, the contract may not be competitively bid. TEX. GOV'T CODE ANN. § 2254.003(a) (Vernon 2000); *see also* Tex. Att'y Gen. Op. No. JM-1189 (1990) at 4 (concluding that a contract that comprises professional services may not be competitively bid by the Professional Services Procurement Act's operation).

We last address your question on whether the District may restrict its discussion of the doctor's contract to a closed meeting. Request Letter, *supra* note 1, at 2. Specifically, you question whether these deliberations fall under exceptions to the Open Meetings Act—the attorney exception and the exception for deliberation regarding economic development negotiations. *Id.* at 4–5. Every regular, special, or called meeting of a governmental body such as the District must be open to the public, except as provided by Government Code chapter 551, the Open Meetings Act. TEX. GOV'T CODE ANN. § 551.002 (Vernon 2004); *id.* § 551.001(3)(H) (defining "governmental body" to include a hospital district). Section 551.071, the attorney exception, is such an exception and permits a governmental body to consult with its attorney in a closed meeting to seek the attorney's advice on legal matters. *See id.* § 551.071. This office has said that a governmental body may consult with its attorney in a closed meeting about the legal issues raised in connection with a proposed contract. *See* Tex. Att'y Gen. Op. No. JC-0233 (2000) at 3. But the governmental body may not discuss the merits of a proposed contract, financial considerations, or other nonlegal matters in a closed meeting held under this exception. *See id.* Thus, the District may meet in a closed meeting to discuss legal issues raised in connection with the contract for the doctor's professional services, but the District is constrained to discussing only the legal issues raised in connection with the contract.

You also ask about section 551.087, the exception for deliberation regarding economic development. *See* Request Letter, *supra* note 1, at 4–5. Section 551.087 provides that a governmental body may conduct a closed meeting

> (1) to discuss or deliberate regarding commercial or financial information that the governmental body has received from a business prospect that the governmental body seeks to have locate, stay, or expand in or near the territory of the governmental body and with which the governmental body is conducting economic development negotiations; or
>
> (2) to deliberate the offer of financial or other incentive to a business prospect described by Subdivision (1).

TEX. GOV'T CODE ANN. § 551.087 (Vernon 2004). We can find no authority permitting the District to engage in or promote economic development programs,[7] and thus we must conclude that, based on the exception's plain language, it does not apply to the District. *See id.* § 551.087(1) (requiring the governmental body to be conducting "*economic development* negotiations" for the exception to apply) (emphasis added).

---

[7]*See generally* Act of May 22, 1975, 64th Leg., R.S., ch. 565, 1975 Tex. Gen. Laws 1829.

## S U M M A R Y

The Sabine County Hospital District, which intends to maintain an ambulance only for transporting patients between hospitals, is not required by law to dispatch its ambulances for emergency calls, even if there are no other ambulances operating within the District.

The District may provide financial incentives in a contract to induce a doctor to move to the District so long as the District finds that such an incentive is necessary for the direct accomplishment of a legitimate public purpose, that the District receives adequate consideration for its expenditure, and that appropriate controls are in place to assure that the public purpose will be carried out. Furthermore, the Professional Services Procurement Act, Government Code chapter 2254, which governs a hospital district's contract for professional services, requires that payment for services rendered under the contract be fair and reasonable, that they be consistent with and not higher than the recommended practices and fees published by the applicable professional associations, and that they not exceed any maximum provided by law. The act does not permit the contract to be competitively bid.

The District may meet under Government Code section 551.071 in a closed meeting to discuss legal issues raised in connection with the contract for the doctor's professional services. The District may not meet under Government Code section 551.087 in a closed meeting to deliberate economic development negotiations.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee